# POSTON *v.* WASHINGTON, ALEXANDRIA, & MT. VERNON RAILROAD COMPANY.

---

SLANDER AND LIBEL; PUBLICATION; GRAND JURIES; PRIVILEGED COMMUNICATIONS.

1. A publication which tends to bring the person referred to into ridicule, contempt, and disgrace is libelous *per se*, even though not charging him with the commission of a crime. (Following *Bailey* v. *Holland,* 7 App. D. C. 184; *Washington Gaslight Co.* v. *Lansden,* 9 App. D. C. 508, and *Washington Times Co.* v. *Downey,* 26 App. D. C. 258, 6 A. & E. Ann. Cas. 765.)

2. In an action against a railroad company for libel, growing out of the newspaper publication by the defendant of a report of a grand jury impaneled at the instance of the plaintiff, and before which he testified as a witness, which report contained charges of improper conduct by plaintiff, the plaintiff cannot raise any question as to whether the grand jury was irregularly summoned, or composed of

unqualified persons; as such an issue cannot be raised in a col-
lateral proceeding.

3. The practice of investigations by grand jury under the old English sys-
tem, in which the institution of the grand jury had its origin,
*reviewed.*

4. The newspaper publication by a railroad company of the report of a
special grand jury, impaneled under the laws of Virginia, to in-
vestigate charges of citizens that the railroad was maintaining a
public nuisance, containing statements tending to bring one of such
citizens into ridicule, contempt, and disgrace, and exonerating the
company, but not constituting an indictment or presentment of any-
one, is the report of an extra-judicial proceeding, and is not privi-
leged, and will support an action for libel by such citizen against the
railroad company.

No. 2212.   Submitted December 13, 1910.   Decided February 6, 1911.

HEARING on an appeal by the plaintiff from a judgment of
the Supreme Court of the District of Columbia, on demurrer
to a declaration in an action of libel, the plaintiff declining to
amend.                                        *Reversed.*

The COURT in the opinion stated the facts as follows:

This is an action by Phil D. Poston against the Washington,
Alexandria, & Mount Vernon Railway Company, and Robert A.
Chester, to recover damages for the publication of a libel.

Plaintiff's amended declaration alleged substantially that he
was a resident of Fairfax county, Virginia, engaged in busi-
ness in the District of Columbia, and had frequent occasion to
use the late cars of the defendant railway company between
the city of Washington and Falls Church, Virginia. That dis-
order frequently existed in said cars, caused by drunken per-
sons, and they were often overcrowded. That plaintiff and
others made complaints to the defendants, which proved inef-
fectual. That thereafter the plaintiff brought said conditions
to the attention of the judge of the circuit court of Alexandria
county, Virginia, who summoned a special grand jury to inves-
tigate the same, and to report to the court whether or not pre-
sentments should be found against defendant for permitting the

nuisances complained of. That said grand jury was irregularly and illegally summoned, and not composed of disinterested freeholders and bona fide residents of Alexandria county, Virginia. That said grand jury, in violation of their oaths and the instructions of the court, proceeded in an illegal manner, and, on February 18, 1909, made a report in writing to said court, which, among other things, contained certain false, malicious, and libelous statements of and concerning plaintiff, reflecting upon his credibility as a witness, and in fact and effect charging him with committing the crime of perjury before said grand jury. That said malicious statements, being so far in excess of the right or duty of said grand jury under the instructions of the court, were expunged by the court as irrelevant to the issues involved. That the said false and malicious report was known to, connived at, and procured by the said defendants. That defendants, well knowing the premises, but maliciously contriving and intending to injure plaintiff in his good name, reputation, etc., and to bring him into scorn, public scandal, and disgrace, and to injure him in the community where he lived and carried on business, and to vex, harass, oppress, and injure him, did, on February 18, 1909, obtain a copy of said report before the same had been recorded, and did falsely, wickedly, and maliciously, compose and publish, and cause to be composed and published, of and concerning the plaintiff and the testimony given by him under oath before said grand jury, in a newspaper called the Washington Post, printed and published in the city of Washington, and widely circulated in Alexandria and Fairfax counties, Virginia, a copy of said false and malicious report. That they caused to be composed, prefixed thereto, and published therewith, certain scandalous, malicious, and defamatory headlines, observations, and comments. The said publication, with the innuendoes explanatory thereof, and the headlines and catch lines, included, thereof, reads as follows:

### Good Order on Cars.

**Grand Jury Fully Exonerates W. A. & F. C. Railway.**

Complainant is Discredited (meaning thereby the said plaintiff).

Complete Investigation of Charges of Disorder on Cars Proves Them Groundless—Publication of Trumped-up Accusations Severely Condemned—Railway Company Takes Every Precaution (meaning thereby that the accusations against said railroad company were trumped-up by said plaintiff and were false).

The special grand jury of the Alexandria county circuit court, in session at Fort Myer, yesterday made a report exonerating the Washington, Arlington, & Falls Church Railway of the charges of disorder and other reprehensible conduct on its cars. The report follows:

"To Hon. J. B. T. Thornton, judge of circuit court, Alexandria county, Va.:

"We, the special grand jury now attending the Alexandria county circuit court at its February term, 1909, after having made a most careful, painstaking, and exhaustive investigation of the complaint to said court, dated February 12, 1909, and signed by William H. Lynch, Talbott Lynch, Edward Ballinger, W. T. Sinclair, —— Hough, F. H. Poston, and Phil D. Poston, charging that disorder, vicious conduct, drunkenness, and other reprehensible conditions are wilfully permitted to exist on the cars of the Washington, Arlington, & Falls Church Railroad Company, and after the most patient examination of a great number of witnesses concerning the matters complained of, hereby report to your honorable court that the said complainant (meaning thereby the complaint made by the said plaintiff and others to the Honorable J. B. T. Thornton, as aforesaid) is so grossly overdrawn, so misleading in character, and is such an exaggeration and misstatement of facts as testified to before this grand jury as to suggest, if not absolute untruthfulness, at least a malicious intent, not only to unjustly implicate the said railroad company, which appears to be blameless in this matter,

but also to spread abroad a reputation for disorder in this community, and on the cars of said railroad company, as shall be a positive detriment not only to the community at large, but in a greater degree to the individual members thereof and to all property interests as well, and to prejudice the minds of the public, and create the impression that lawlessness is rampant in Alexandria county (meaning thereby that the said plaintiff had testified falsely with a malicious intent to injure said railroad company and the community through which it passed, as well as the residents thereof).''

### Seeks to Maintain Order.

"Whereas the testimony presented before this jury shows conclusively that the said railroad company is using its utmost endeavors to maintain order over its lines, and, as a matter of proven fact, is keeping much better order on its cars than is usual on either city or suburban lines; and that at the very worst, such sporadic cases of disorder as sometimes occur are usually mild in character and quickly controlled, being confined to the late cars, especially on Saturday night;

"And this grand jury wishes especially to call attention to the statements contained in the newspaper articles published in the Washington Herald, February 8, 1909, and in the Evening Star, February 9, 1909, which the testimony of no less than four responsible witnesses, whose high standing for honor, integrity, and truthfulness cannot be questioned, and who were passengers on the car at the time referred to in said newspaper articles, shows to have been misleading in every particular, besides which the sworn testimony of the party lodging said complaint (meaning thereby the said plaintiff) with your honorable court, as well as that of many other witnesses, shows that said newspaper articles were cooked up at the house of said complainant (meaning thereby that the said plaintiff had not only inspired and cooked up newspaper articles which were untrue and misleading, but had also testified to such as being the fact before said grand jury) out of several incidents which

occurred at periods of time far remote from each other, and which the reporters of the said newspapers served to the public as the successive experiences of one continuous midnight ride."


## Protests against Untruths.

"And this grand jury hereby wishes to protest in the most earnest and emphatic manner against such untruthful and hurtful publications, and to condemn in unmeasured terms the meddlesome and misguided spirit which would inspire such misleading statements, since the result cannot be otherwise than detrimental to the best interests of our county, and a direct material loss to every member of this community.

"And, further, this jury wishes to express its indignation at the harmful and unjust course of the said newspapers in publishing unedited and unverified articles of the scandalous and libelous character of those under consideration, and we most sincerely deprecate the meddlesome interference of the principal complainant in this matter (meaning thereby the plaintiff), who turns out to be a man who is not even a resident of this county, but who seems to be possessed with a spirit of enmity and unfairness towards the said railroad company, which has been fully termed crankiness, but by reason of a peculiar altruistic twist, is likely to gain a hearing from those who do not look beneath the surface; a man, too, whose testimony before this jury has not only crumbled to nothing when subjected to even a mild cross-examination, but has been unsupported by a single witness of the dozens which he himself has produced, besides being flatly contradicted by many of the same witnesses. A man, also, whom testimony before this jury has shown to be guilty of destroying the property of said railroad company to the extent of smashing a car window for the ostensible purpose of ventilation (thereby meaning to charge the plaintiff with having published or caused to be published unverified and untruthful articles of a scandalous and libelous character against

said railroad company, and the community through which it ran, and with being a crank, unworthy of belief, and who had in fact testified falsely before said grand jury, and who had also been guilty of destroying private property, without the consent of the owner).''

## Management is Commended.

"And now, after a careful survey of all the testimony submitted, relating to the matters complained of, it is the sense of this jury that in order to meet any possible cases of boisterousness or disorder on the late cars out of Washington or from Rosslyn, that extra men should be detailed to ride on said late cars to give assistance to the conductor, should such become necessary.

"But, since the testimony shows that this has been the practice of the said railroad company for some time past, there is no further recommendation that seems to be necessary, and it only remains for this jury to commend the present management of said railroad company for its efforts to give our people a safe, commodious, and efficient suburban car service, and to assure the said management its efforts in this direction are appreciated, and that in all betterments of said service the sentiments and support of the responsible element of this community is heartily with it, recognizing as we do that the best interests of both the railroad company and the community through which it passes are identical.

"Finally, it is the unanimous sense of this jury, based on the testimony submitted, that this community as well as the said railroad company have received a gratuitous and unmerited slap in the face by the aforesaid publications, and therefore have a moral right to demand, in the interests of all concerned, that the report of this jury be published in said newspapers in at least as conspicuous a manner as that given to the said articles containing said charges, and we hereby request

your honorable court to furnish said newspapers with a copy of
this report for publication.

> Thomas J. De Lashmutt.
> S. J. Mulhall.
> A. D. Torreyson.
> Arthur J. Porter.
> Robert L. King.
> I. N. Garrison.
> F. S. Corbett.
> Julian P. Baldwin, *Foreman.*"

Some further allegations follow, regarding the motives of
defendants, the nature of the charges against plaintiff, etc., and
the conclusion is that he has been damaged in the sum of
$15,000.

Defendants demurred to the declaration, assigning as mat-
ters of law to be argued on the hearing: 1. No cause of action
alleged. 2. The report of the grand jury is a privileged com-
munication. 3. The published report makes no charges that
can be construed to be libelous. 4. The legality and jurisdic-
tion of the grand jury cannot be questioned in this proceeding.
5. The proceedings were instigated by plaintiff and others, and
he can have no action for the publication of the result.

The demurrers were sustained, and, plaintiff declining to
amend, judgment was entered for the defendants.

*Mr. J. Barrett Carter* and *Mr. John C. Brooke* for the appel-
lant.

*Mr. John S. Barbour* and *Mr. D. S. Mackall* for the appellees.

Mr. Chief Justice SHEPARD delivered the opinion of the
Court:

1. Evidently the demurrer was sustained on the ground that
the publication was privileged as the report of a judicial pro-

ceeding, and it is to that point that the argument has been chiefly directed.

If not privileged, it is clear that the publication is libelous and actionable. Whether it substantially charges plaintiff with the crime of false swearing, as claimed, we need not pause to determine; for it is plain that it tends to bring him into ridicule, contempt, and disgrace, and therefore furnishes sufficient foundation for the action. *Bailey* v. *Holland,* 7 App. D. C. 184–189; *Washington Gaslight Co.* v. *Lansden,* 9 App. D. C. 508–530; *Washington Times Co.* v. *Downey,* 26 App. D. C. 258–263, 6 A. & E. Ann. Cas. 765.

2. The allegation that the grand jury was irregularly summoned, and composed of unqualified persons, is not essential to the maintenance of the action. In our opinion this is a question that the plaintiff cannot raise in this collateral proceeding. Moreover, called at his suggestion, he had the opportunity and it was his duty to make objections to the persons summoned for service on the special grand jury, before it was impaneled and entered into the investigation. Instead of doing this, he acquiesced in the qualifications of the jurors, and presented his complaint to them.

3. Assuming that the investigation of the conduct of the railway company by a grand jury charged with that duty by a court of competent jurisdiction is a judicial proceeding, it is necessary to consider whether the report presented and published was within its jurisdiction and duty. Grant that the grand jury had the power to present or indict the railway company if it had found the charges to be true, or even to present or indict the plaintiff for false swearing upon finding that his testimony in support of the complaint was false, the question remains: Had it the power to make the report that it did, not only that there was no foundation for the indictment of the defendant, but charging malice and improper conduct against the plaintiff? If it had not, the report is not a judicial proceeding, and entitled to privilege as such.

The argument on behalf of appellee is that this report is a presentment within the ordinary power of a grand jury. We

cannot concur in this view. The practice under the old English system in which the institution of the grand jury had its origin is thus stated by Mr. Justice Brown in *Hale* v. *Henkel,* 201 U. S. 43–59, 50 L. ed. 652–659, 26 Sup. Ct. Rep. 370: "Criminal prosecutions were instituted at the suit of private prosecutors, to which the King lent his name in the interest of the public peace and good order of society. In such cases the usual practice was to prepare the proposed indictment and lay it before the grand jury for their consideration. * * * 'A presentment, properly speaking, is a notice taken by a grand jury of any offense, from their own knowledge or observation, without any bill of indictment laid before them at the suit of the King, as the presentment of a nuisance, a libel, and the like; upon which the officer of the court must afterwards frame an indictment, before the party presented can be put to answer it.' " This last paragraph is quoted from 4 Bl. Com. 301. See also Wharton, Crim. Proc. 62; Chitty, Crim. Law, 162.

"Presentment, in its limited sense, is a statement by the grand jury of an offense, from their own knowledge, without any bill of indictment laid before them, setting forth the name of the party, place of abode, and the offense committed, informally, upon which the officer of the court afterwards frames an indictment." *Collins* v. *State,* 13 Fla. 651, 653; 201 U. S. p. 62.

When an indictment had been prepared and submitted to the grand jury, it was indorsed, "a true bill," or "not a true bill," and signed by the foreman according to the actual finding of the jury, or the necessary number thereof.

In the ordinary American practice, where a prosecuting attorney is an officer of the State, and as such gives advice and aid to the grand jury when called upon, the findings are reported to him for preparation of the necessary indictment. When this is adopted and officially signed, it is presented to the court and noted on the minutes thereof. No other presentment is necessary and seems rarely to be made in modern practice. Where, however, formal presentments, as above described, may have been made upon occasion, no prosecution could be

had upon them, but only on the indictment or information founded thereon. The presentment and the resulting indictment were considered as one act. *United States* v. *Hill*, 1 Brock. 156, Fed. Cas. No. 15,364. The latter took the place of the former for all purposes. *Laird* v. *State*, 61 Md. 309–311.

The practice in the State of Virginia seems to have been exceptional in this respect. As declared by her court of appeals: "The presentment moreover, seems in Virginia, from a very distant period, to have been made the foundation for a summons to show cause why an information for the offense presented should not be filed against the accused. No authority has been found in the English books that warrants such an use of the presentment. From what has been stated before as to the nature of a presentment in the English practice, no such use, it is supposed, could be made of it." *Com.* v. *Christian*, 7 Gratt. 631–636. See also *Com.* v. *Towles*, 5 Leigh, 743–750.

The presentment referred to by the Virginia court, however, was evidently the regular one presenting the name of the party and his commission of a specific offense, with the time and place, and the essential particulars thereof, on which an indictment or information could be framed.

The "presentment" so called, that is under consideration, is nothing of this kind. The grand jury having found no justification for the indictment or presentment of the railway company, its regular and proper course would have been so to report to the court that, its duties being ended, it might be discharged. It might, possibly, have indicted the complainant for false swearing, or made a presentment to that effect as the foundation of an information, if one would lie for such an offense. Instead of pursuing the latter course, a long report was made, reciting as facts matters calculated to bring the complainant into public contempt and disgrace. It was not, and was not intended to be, a presentment on which he could be cited to show cause why an information should not be presented against him. Had it been, he could have had an opportunity

to test the truth of the charges upon trial. Turning now to the sections of the Code of Virginia that have been brought to our attention, we find no provision authorizing a report of this description. Section 1729a, Pollard's Code, provides that when complaint has been made to the circuit, and other courts named, by five or more citizens, setting forth the existence of a public nuisance, the court, or the judge thereof in vacation, shall summon a special grand jury to specially investigate the said complaint. That course was pursued in this case. The section then provides that the grand jury, if satisfied that the nuisance exists, shall proceed to make presentment against such person or persons as it shall find to have created or caused such nuisance. Upon any such presentment, the court shall order a copy served upon the person presented, or whose property is presented; and to any such proceeding, if it be *in rem,* any person interested, or for or in behalf of the owner of such premises, may make defense. Other provisions of the Code (3978–3980, 3982, 3983, and 3984) regulate the calling of grand juries, their duties, and the manner of making and rendering indictments and presentments. They shed no light upon this proceeding. Other sections refer to the examination of certain acts of administration by public officers, the inspection of tobacco, violations of the revenue laws, the protection of fish, etc., and the return of indictments in such instances. Section 3989 provides that all prosecutions for offenses against the commonwealth, unless otherwise provided, shall be by presentment, indictment, or information.

As we have seen, the report of the grand jury charged with the investigation of the complaint in this case was neither an indictment nor a presentment of the commission of an offense.

A practice by grand juries of making reports upon the administration of public affairs, the condition of public works, and other matters of public interest, seems to have grown up in many States, authorized probably by statute. No statute of the State of Virginia has been cited as authorizing such practice. While such reports may, in some instances, tend to the advancement of the public welfare, yet, being extrajudicial,

their public character affords no protection to the grand jurors themselves, against action if they contain libelous matters. *Rector v. Smith,* 11 Iowa, 302–307. That was an action for libel against a member of a grand jury for charges contained in a report made to the court, of extravagance and improper keeping of accounts of the expenditure of certain public funds by the county judge. There was no indictment, nor was the report in the nature of a presentment of the commission of a misdemeanor as the foundation of an information. A statute making it the special duty of the grand jury to inquire into the conduct of public officers was relied on as justifying the report. The court held that the grand jury had the power to indict for offenses found to have been committed, and nothing more. It was said: "A report by a grand jury presents nothing upon which the court can act, unless it is in reference to the condition of the prison. The court can take no jurisdiction over the complaint charged by such report. Nor can a person thus presented have an opportunity to show himself innocent of the matters complained of. With this view of the question, we conclude that the report presented by defendant as a grand juror was not a privileged communication, and that he cannot plead this in bar of plaintiff's right to recover."

That decision, in our opinion, is sound in principle.

Our conclusion is that the report of the grand jury in this case was beyond its special powers and jurisdiction in the premises, and that its publication is not a matter of privilege.

This renders discussion of the other questions in the case unnecessary. For the reasons given, the judgment will be reversed, with costs, and the case remanded, with direction to overrule the demurrers, and to take further proceedings not inconsistent with this opinion.                    *Reversed.*