**UNITED STATES v. AMERICAN MEDICAL ASS'N et al.**

**No. 63221.**

District Court of the United States for the District of Columbia.

Jan. 31, 1939.

Allan Hart, of Portland, Or., Grant W. Kelleher, of Washington, D. C., John Henry Lewin, of Baltimore, Md., and Douglas Maggs, Sp. Asst. to Atty. Gen., for the United States.

Charles S. Baker, Seth Richardson, and John L. Laskey, all of Washington, D. C., and Edward M. Burke, of Chicago, Ill., for defendants.

PROCTOR, Justice.

The defendants have filed a motion which is countered by a motion of the government to strike. The former, interpreted in the light of supporting affidavit and argument, in effect seeks approval by the court for defendants or their counsel to elicit from persons, composing the late grand jury, which returned the indictment, information as to evidence and proceedings before it, and for examination of the transcript covering the same, with a view to discovering whether there was misconduct by government counsel or incompetent and irrelevant evidence which might be used by defendants to vitiate the indictment. One of defense counsel by affidavit alleges that he has been "informed" by various defendants and "believes" that attorneys for the government presented irrelevant testimony to the grand jury, advised it as to the law, and requested and persuaded it to return the indictment; that certain members of the jury have indicated a willingness to talk with him concerning said matters, except for uncertainty as to their right. It is asserted that the defendants desire to file pleas in abatement and motions to quash the indictment, and that the truth as to these matters

430

can only be determined with that certainty requisite to the making of such pleadings from members of the grand jury or the official transcript. Upon this alleged state of facts, the court is asked to define the rights and duties of the various parties so as to clarify any uncertainties existing in connection with an inquiry by the defense for the preparation and filing of the contemplated pleadings; also to examine jurors and transcript to discover for benefit of defendants the truth as to alleged irregularities affecting the indictment, to the end that the intended steps to be taken by defendants to vitiate the indictment may be backed by definite allegations and proof sufficient to legally sustain and establish the same.

The motion in its broad aspects presents two main questions: First, it asks for an expression of the court's views, in the nature of a declaratory opinion, as to the scope and duration of the grand juror's oath of secrecy. Second, it seeks the court's aid to conduct an investigation of the proceedings of the grand jury to discover for defendants possible grounds upon which to prepare their threatened attack upon the validity of the indictment.

■ The first proposition might be dismissed because it presents no concrete justiciable question for the court's decision. A purely legalistic disposition of the matter would dictate that course. But the matter as it now stands is unusual. It concerns many persons, including the former jurors. I also appreciate the sincerity and good faith of the parties and their counsel in asking the guidance of the court. Accordingly, for all those concerned who may wish my views, I feel constrained to say that in my opinion the oath taken by the grand jurors "to keep secret the counsel of the United States, your fellows and your own" is not limited by time or circumstance. It is a lasting obligation binding all who have served as grand jurors. State v. Fasset, 16 Conn. 457; State v. Hamlin, 47 Conn. 95, 36 Am.Rep. 54; People v. Nall, 242 Ill. 284, 89 N.E. 1012; Bartlett v. Perkins, 13 Me. 87; In re Montgomery, 126 App.Div. 72, 110 N.Y.S. 793. Legal history suggests nothing to qualify the literal meaning of the words imposing secrecy. 4 Blackstone, Commentaries 126; 1 Chitty's Criminal Law 317; Bailey Onus Probandi 451. Neither indictment, arrest of the accused, nor expiration of the jury term will operate to release a juror from the oath of secrecy, as the defendants here contend. That can only be done by a court acting in a given case when in its judgment the ends of justice so require. United States v. Gouled, D.C., 253 F. 242; McKinney v. United States, 8 Cir., 199 F. 25; Olmstead v. United States, 9 Cir., 19 F.2d 842, 53 A.L.R. 1472; United States v. Garsson, D.C., 291 F. 646. In keeping with custom, instructions to this effect were given the former grand jurors and they were admonished to strictly observe the same. I am confident those instructions conform to the ancient and traditional concept of a grand juror's obligation.

The departure taken by the Circuit Court of Appeals for the Fourth Circuit, some thirty years ago (Atwell v. United States, 162 F. 97, 17 L.R.A.,N.S., 1049, 15 Ann.Cas. 253), in holding that secrecy is not required after indictment has been found, the accused arrested and the grand jury discharged, seems to have made but slight impression upon the federal courts in disposing of many kindred questions arising since that time. I cannot accept the conclusions or reasons stated in the Atwell case. Considerations of public policy demand a lasting secrecy. Jurors are thereby inspired with assurance of security in discharging their important duties and restrained from impeaching their findings. United States v. Rintelen, D.C., 235 F. 787. Witnesses are encouraged to truth and frankness. Metzler v. United States, 9 Cir., 64 F.2d 203. Innocent citizens are protected against the stigma of complaints which upon investigation fail of presentment or indictment. State v. Broughton, 7 Ired. 96, 29 N.C. 96, 45 Am.Dec. 507. Then, too, many courts have stressed as another reason for secrecy that it prevents an accused from securing testimony that the government expects to use against him at the trial. United States v. Seidman, D.C., 45 F.2d 178, Kastel v. United States, 2 Cir., 23 F.2d 156, and Simpson v. United States, 4 Cir., 11 F.2d 591. I am convinced that when at their installation these grand jurors were told by the court they should at no time during their period of service or thereafter reveal any happening before the grand jury unless so ordered by a court, they were given the true meaning of their oath of secrecy.

■■ As to the second proposition, there is no question of a court's power to go back of an indictment to inquire whether vitiating irregularities induced the finding.

United States v. Gouled, supra; Laska v. United States, 10 Cir., 82 F.2d 682; United States v. Oley, D.C., 21 F.Supp. 281. That is conceded by government counsel. But it is a power sparingly used; justified only where by proper verified pleading a clear and positive showing is made of gross and prejudicial irregularity influencing the grand jury in returning an indictment. Averments on information and belief have been uniformly held not enough. United States v. Nevin, D.C., 199 F. 831; United States v. Bopp, D.C., 232 F. 177; United States v. Goldman, D.C., 28 F.2d 424; United States v. Lehigh Valley R. Co., D. C., 43 F.2d 135. That is conceded by defendants. They admit a pleading to abate or quash must be certain and definite in its allegations of prejudicial facts. They assert as a reason for asking an investigation by the court that they are unable to make the requisite averments and oath. Thus we have the novel situation of defendants admitting that they are in no position to file the essential pleading to justify the court in making an inquiry, yet nevertheless asking that the inquiry be ordered anyway, in the expectation or hope that material will turn up to support a proper plea. Manifestly the court ought not grant such a motion. It is lacking in every essential of a plea in abatement or motion to quash. Its allegations, made only on information and belief, are vague and uncertain—mere statements of conclusions, wholly lacking in factual details. The effect of granting such a motion would be to break down all legal checks against technical, dilatory tactics. The strong presumption of the regularity of grand jury proceedings would no longer prevail. Cox v. Vaught, 10 Cir., 52 F.2d 562. Every accused could upon the flimsiest pretext enlist the court's aid in a "fishing expedition", to discover some supposed irregularity to use as a basis for dilatory action; to cull over the evidence and get the government's case against him in advance of trial; to divert and turn back the course of a criminal case from a trial of himself to a trial of the grand jury and the prosecuting officers. United States v. McGuire, 2 Cir., 64 F.2d 485; United States v. Rintelen, D.C., 235 F. 787; United States v. Mitchell, C.C., 136 F. 896. There could be no effective way of guarding against the manifold abuses that such a practice would encourage. The defendants complain that with the lips of jurors sealed and the transcript closed to them

they cannot obtain the true facts except by aid of the court. But it must be remembered that sound reasons of public policy in the administration of justice lie back of the rules which forbid free access to these channels of information. As Judge Learned Hand, in dealing with a somewhat similar situation, has said: "No doubt grand juries err and indictments are calamities to honest men, but we must work with human beings and we can correct such errors only at too large a price". United States v. Garsson, D.C., 291 F. 646, 649. See, also, Anderson v. United States, 8 Cir., 273 F. 20 and Murdick v. United States, 8 Cir., 15 F.2d 965.

I am satisfied no proper grounds have been laid in support of defendants' motion. To grant it would do violence to salutary rules strongly rooted in our jurisprudence which, without sacrificing any of the fundamental safeguards, look to the speedy and practical administration of criminal justice with due regard to the just rights of society. McKinney v. United States, 8 Cir., 199 F. 25, 29.

The motion to strike will be granted.