**In re REPORT AND RECOMMENDATION OF JUNE 5, 1972 GRAND JURY CONCERNING TRANSMISSION OF EVIDENCE TO the HOUSE OF REPRESENTATIVES.**

Misc. No. 74–21.

United States District Court, District of Columbia.

March 18, 1974.

Leon Jaworski, Sp. Prosecutor, Philip A. Lacovara, Counsel to Sp. Prosecutor, Peter M. Kreindler, Executive Asst. to Sp. Prosecutor, Washington, D. C., for the Watergate Special Prosecution Force.

James D. St. Clair, Sp. Counsel to the President, Richard A. Hauser and John A. McCahill, Associate Counsel, Washington, D. C., for the President.

John Doar, Sp. Counsel, Washington, D. C., Albert E. Jenner, Jr., Minority Counsel, Chicago, Ill., for the House Committee on the Judiciary, House of Representatives.

William G. Hundley, Plato Cacheris, Washington, D. C., for John N. Mitchell.

John J. Wilson, Frank H. Strickler, Washington, D. C., for Harry R. Haldeman and John D. Ehrlichman.

Sidney Dickstein, Washington, D. C., for Colson.

David Bress, Thomas C. Green, Washington, D. C., for Robert C. Mardian.

Jacob A. Stein, Edmund D. Campbell, Washington, D. C., for Parkinson.

John M. Bray, Washington, D. C., for Strachan.

## OPINION

SIRICA, Chief Judge.

On March 1, 1974, in open court, the June 5, 1972 Grand Jury lodged with the Court a sealed Report. The materials comprised in that Report were filed by the Court and ordered held under seal pending further disposition. The materials were accompanied by a two-page document entitled *Report and Recommendation* which is in effect a letter of transmittal describing in general terms the Grand Jury's purpose in preparing and forwarding the Report and the subject matter of its contents. The transmittal memorandum further strongly recommends that accompanying materials be submitted to the Committee on the Judiciary of the House of Representatives for its consideration. The Grand Jury states it has heard evidence that it regards as having a material bearing on matters within the primary jurisdiction of the Committee in its current inquiry, and notes further its belief that it ought now to defer to the House of Representatives for a decision on what action, if any, might be warranted in the circumstances.

After having had an opportunity to familiarize itself with the contents of the Report, the Court invited all counsel who might conceivably have an interest in the matter, without regard to standing, to state their positions concerning disposition.[1] The President's position, through counsel, is that he has no recommendation to make, suggesting that the matter is entirely within the Court's discretion.[2] He has requested that should the Report be released, his counsel have an opportunity to review and copy the materials.[3] The House Judiciary Committee through its Chairman has made a formal request for delivery of the Report materials.[4] The Special Prosecutor has urged on behalf of the Grand Jury that its Report is authorized under law and that the recommendation to forward the Report to the House be honored.[5] Finally, attorneys for seven persons named in an indictment returned by the same June, 1972 Grand Jury on March 1, 1974, just prior to delivery of the Grand Jury Report,[6] have generally objected to any disclosure of the Report, and in one instance recommended that the Report be expunged or returned to the Jury.[7]

Having carefully examined the contents of the Grand Jury Report, the Court is satisfied that there can be no question regarding their materiality to the House Judiciary Committee's investigation. Beyond materiality, of course, it is the Committee's responsibility to determine the significance of the evidence, and the Court offers no opinion as to relevance. The questions that must be decided, however, are twofold: (1) whether the Grand Jury has power to make reports and recommendations, (2) wheth-

1. The Special Prosecutor notified the Court shortly before delivery of the Report that the Grand Jury intended to take such action. The Court had opportunity only for a brief review of relevant authorities, and decided to receive and hold the Report under seal. The Court's first opportunity to peruse the Grand Jury materials came on Monday, March 4th, and a hearing was scheduled for Wednesday, March 6th, to include all those who might possibly have an interest in the matter.

The President's counsel has been permitted to review the two-page *Report and Recommendation.* Other counsel were offered a similar opportunity, but with one exception declined. See Transcript of Proceedings, March 6, 1974, Misc. 74–21 at pp. 63–68, 86–89, [hereinafter cited as Transcript].

2. Transcript at pp. 2, 3, 31, 32.

3. Letter to the Honorable John J. Sirica from James D. St. Clair dated March 7, 1974 and filed in Misc. No. 74–21.

4. Letter to the Honorable John J. Sirica from the Honorable Peter W. Rodino, Jr., dated March 8, 1974, and filed in Misc. No. 74–21. See also Transcript at p. 30.

5. Memorandum of the United States on Behalf of the Grand Jury filed in Misc. No. 74–21 under seal. See also Transcript at pp. 68–85.

6. United States v. John N. Mitchell, et al., Criminal Case No. 74–110.

7. Letter to the Honorable John J. Sirica from John J. Wilson, Esq., dated March 4, 1974 and filed in Misc. No. 74–21. See also Transcript at pp. 4–21, 51–61, 90–102.

er the Court has power to disclose such reports, and if so, to what extent.

## I.

Without attempting a thorough exposition, the Court, as a basis for its discussion, notes here some principal elements in the development and authority of the grand jury. Initially, the grand jury, or its forerunner, was employed to supply the monarch with local information regarding criminal conduct and was wholly a creature of the crown. As the grand jury gained institutional status, however, it began to act with a degree of independence, and in some cases refused to indict persons whom the state sought to prosecute.[8] Thereafter it became common for grand juries to serve the dual function of both charging and defending. By virtue of the Fifth Amendment, grand jury prerogatives were given institutional status in the United States, and grand juries have ever since played a fundamental role in our criminal justice system.[9]

The grand jury is most frequently characterized as an adjunct or arm of the judiciary. While such a characterization is in the general sense accurate, it must be recognized that within certain bounds, the grand jury may act independently of any branch of government. The grand jury may pursue investigations on its own without the consent or participation of a prosecu-

tor.[10] The grand jury holds broad power over the terms of charges it returns,[11] and its decision not to bring charges is unreviewable. Furthermore, the grand jury may insist that prosecutors prepare whatever accusations it deems appropriate and may return a draft indictment even though the government attorney refuses to sign it.[12]

We come thus to the question of whether grand jury prerogatives extend to the presentation of documents that disclose evidence the jury has gathered but which do not indict anyone. The sort of presentment mentioned above, where government attorneys decline to start the prosecutorial machinery by withholding signature from a draft indictment, is in the correct sense such a report since grand jury findings are disclosed independent of criminal proceedings, and it appears that nowhere has grand jury authority for this practice been denied, particularly not in this Circuit.[13] Nevertheless, where the jury's product does not constitute an indictment for reasons other than an absent signature, there is some disagreement as to its propriety.

It should be borne in mind that the instant Report is not the first delivered up by a grand jury, and that, indeed grand juries have historically published reports on a wide variety of subjects.[14] James Wilson, a signer of both the Declaration of Independence and the Constitution and later an Associate Justice of

---

8. The most celebrated cases in England involved ignoramus returns to charges against Stephen Colledge [8 How.St.Tr. 550 (1681)] and the Earl of Shaftesbury [8 How.St.Tr. 759 (1681)]. In the United States, the grand jury action favoring Peter Zenger is equally prominent [Morris, Fair Trial 69–95 (1952)]. *See also*, Kuh, The Grand Jury "Presentment": Foul Blow or Fair Play, 55 Colum.L. Rev. 1103, 1107–09 (1955).

9. See generally Branzburg v. Hayes, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972) and Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906).

10. United States v. Thompson, 251 U.S. 407, 413–415, 40 S.Ct. 289, 64 L.Ed. 333 (1920); Blair v. United States, 250 U.S. 273, 282, 39 S.Ct. 468, 63 L.Ed. 979 (1919); Hale v. Henkel, *supra* note 9; Frisbie v. United

States, 157 U.S. 160, 163, 15 S.Ct. 586, 39 L.Ed. 657 (1895).

11. Gaither v. United States; 134 U.S.App.D.C. 154, 413 F.2d 1061, 1066 (1969).

12. United States v. Cox, 342 F.2d 167 (5th Cir.) cert. denied 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965); Gaither v. United States, *supra* note 11; In Re Miller, 17 Fed. Cas. p. 295 (No. 9,552) (D.C.D.Ind.1878); In Re Presentment of Special Grand Jury, January 1969, 315 F.Supp. 662 (D.Md.1970); United States v. Smyth, 104 F.Supp. 283 (N. D.Cal.1952).

13. See Gaither v. United States, *supra* note 11.

14. See, 55 Colum.L.Rev., *supra* note 8 at 1109–1110 citing examples both in England and the American colonies.

the Supreme Court made these pertinent observations in 1791:

> The grand jury are a great channel of communication, between those who make and administer the laws, and those for whom the laws are made and administered. All the operations of government, and of its ministers and officers, are within the compass of their view and research. They may suggest publick improvements, and the modes of removing publick inconveniences: they may expose to publick inspection, or to publick punishment, publick bad men, and publick bad measures.[15]

On this historical basis, with reliance as well upon principles of sound public policy, a number of federal courts have upheld and defined the general scope of grand jury reportorial prerogatives. In In Re Presentment of Special Grand Jury Impaneled January, 1969, 315 F.Supp. 662 (D.Md.1970), Chief Judge Thomsen received a "presentment" describing the course of an investigation by a Baltimore grand jury into possible corruption related to a federal construction project. The "presentment" also outlined indictments which the grand jury was prepared to return in addition to other indictments handed up with the "presentment," but noted that the United States Attorney had been directed not to sign them. The "presentment" was held under seal while interested parties argued its disposition, and was then released publicly in modified form. The grand jury's common law powers, Chief Judge Thomsen ruled, "include the power to make presentments, sometimes called reports, calling attention to certain actions of public officials, whether or not they amounted to a crime." [16]

Chief Judge Thomsen also cited Judge Wisdom's concurring opinion in United States v. Cox, 342 F.2d 167 (5th Cir.) cert. denied 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965), for the proposition that, whether used frequently or infrequently, there is no reason to suppose that the powers of our constitutional grand jury were intended to differ from those of its "English progenitor." [17] In the *Cox* case four of the seven judges of the Fifth Circuit sitting *en banc* held that courts may order the United States Attorney to assist a grand jury by drafting "forms of indictment" according to the jury's wishes, while a different four-three combination ruled that the prosecutor could not be compelled to sign the presentment and thereby concur, on behalf of the executive branch, in prosecution. Judge Brown observed, without challenge from his brethren,

> To me the thing [is] this simple: the Grand Jury is charged to report. It determines what it is to report. It determines the form in which it reports.[18]

The Fifth Circuit recently had an opportunity to consider the specific question of grand jury reports, but was able to "pretermit the issue" as raised by a state court judge unfavorably mentioned in the report. In Re Grand Jury Proceedings, 479 F.2d 458 (5th Cir. 1973). The court found that the portions of the report dealing with purely local affairs were of no concern to a federal grand jury and should be expunged. The remainder of the report was left intact, however, and Judge Ainsworth writing for the court observed, citing a lengthy footnote:

> We point out . . . that there is persuasive authority and considerable

---

15. The Works of James Wilson, ed. R. G. McCloskey, vol. II at 537 (1967).

16. 315 F.Supp. at 675. Chief Judge Thomsen quotes at length from the eloquent statement of New Jersey Chief Justice Vanderbilt regarding the reasons for allowing such presentments. *Id.*

17. 342 F.2d 167, 186 (5th Cir. 1965).

18. *Id.* at 184. See also 342 F.2d at 180 (opinion of Rives, Gewin & Bell, JJ.), and 342 F.2d at 189 (opinion of Wisdom, J.) : "No one questions the jury's plenary power to inquire, to summon and interrogate witnesses, and to present either findings and a report or an accusation in open court by presentment."

historical data to support a holding that federal grand juries have authority to issue reports which do not indict for crime, in addition to their authority to indict and to return a no true bill.[19]

The Seventh Circuit, in an opinion by Judge Barnes, In Matter of Application of Johnson et al., 484 F.2d 791, (7th Cir. 1973), recently upheld the authority of federal grand juries to issue reports. Chief Judge Robson of the Northern District of Illinois there permitted public distribution of a printed report based on the grand jury investigation into a confrontation between Chicago police and members of the Black Panther Party in which two persons were killed. Fifteen months after the report had been printed and distributed at the Government Printing Office, persons named in the report sought to have it expunged from court records. On appeal following denial of the motion, the Circuit Court noted that any harm was an accomplished fact, but more importantly, that the appellants were not charged with illegal activity. The court stated plainly, "the grand jury had the authority to make the report." [20]

The cases most often relied upon in denying reportorial powers are Application of United Electrical, Radio & Machine Workers of America, et al., 111 F.Supp. 858 (S.D.N.Y.1953), and Hammond v. Brown, 323 F.Supp. 326 (N.D. Ohio), affirmed 450 F.2d 480 (6th Cir. 1971).[21] Yet each of these decisions is careful to enumerate the factors militating against approval of the specific reports at issue and refrains from a blanket denial of reporting powers, although the *Hammond* court goes so far as to dub reports "as unnecessary as the human appendix." [22] Of these opinions, only that of Judge Weinfeld in *United Electrical Radio and Machine Workers* speaks from a fact situation involving

19. 479 F.2d at 460 (footnote omitted).
Counsel for two of the defendants in United States v. Mitchell, et al., CC 74–110, suggests that the action of Congress in specifically conferring reporting powers on special grand juries under 18 U.S.Code § 3331 et seq. is probative of the contention that grand juries lacked such powers at common law. This proposal, however, overlooks the fact that power to report was there made explicit simply to be certain that there could be no question in light of Judge Weinfeld's decision in *United Electrical* (111 F.Supp. 858). Congressman Poff, a sponsor of the bill creating special grand juries explained that since

. . . the precise boundaries of the reporting power have not been judicially delineated . . . , the authority to issue reports relevant to organized crime investigations has been specifically conferred upon the special grand juries created by this title. The committee does not thereby intend to restrict or in any way interfere with the right of regular Federal grand juries to issue reports as recognized by judicial custom and tradition. (Congressional Record, Vol. 116, part 26, 91st Cong., 2d Sess., October 7, 1970 at 35291.)

20. 484 F.2d at p. 797.

21. Counsel have cited a further federal decision in this Circuit, Poston v. Washington, Alexandria & Mt. Vernon R.R., 36 App.D.C. 359 (1911), as ruling that in the District of Columbia a regular federal grand jury "has no power other than to indict or ignore." That decision, however, involved a state grand jury, and ruled only as to "the practice in the State of Virginia." 36 App.D.C. at 369.

Within state judicial systems, the dissent in Jones v. People, 101 App.Div. 55, 92 N.Y. S. 275 (2d Dep't.), appeal dismissed 181 N. Y. 389, 74 N.E. 226 (1905) is often cited by courts rejecting grand jury reports, although the majority opinion which approved such reports in certain circumstances is apparently still the law in New York. For the proposition that state grand juries have legal authority to issue reports, Chief Justice Vanderbilt's opinion in In Re Camden County Grand Jury, 10 N.J. 23, 89 A.2d 416 (1952) has become a landmark. The author of the Note, The Grand Jury as an Investigatory Body, 74 Harv.L.Rev. 590, 595–96 (1961), suggests that a majority of state courts have disallowed reports unaccompanied by indictments, but have carved out exceptions for reports criticizing public officials, and for those which address general conditions and do not necessarily identify specific individuals. Consistent with federal decisions, the author further notes that state courts unanimously disallow reports made up solely of opinions and those which undertake to do nothing but advise the legislative or executive branches.

22. 323 F.Supp. 326, 351 (N.D.Ohio 1971).

a federal grand jury. In that case, petitioners, United Electrical and union officers, moved to expunge from court records the "presentment" of a 1952 grand jury in the Southern District of New York. The grand jury had investigated possible violations of perjury and conspiracy laws with reference to non-Communist affidavits filed with the National Labor Relations Board. Because leaks to newspapers revealed the names of persons referred to by the "presentment" or report, including petitioners, Judge Weinfeld treated the report as identifying its targets in derogatory contexts. The jury indicted no one, although its allegations could have been the basis for criminal proceedings. While recognizing that "reports of a general nature touching on conditions in the community . . . may serve a valuable function and may not be amenable to challenge," [23] the court strongly disapproved of accusatory pronouncements which publicly condemn and yet bar their victim from a judicial forum in which to clear his name.

> The widespread publication of the charges and the identification of petitioners as the offenders subjected them to public censure to the same degree as if they had been formally accused of perjury or conspiracy. At the same time it deprived them of the right to defend themselves and to have their day in a Court of Justice—their absolute right had the Grand Jury returned an indictment.
>
> \*  \*  \*  \*  \*  \*
>
> ". . . [I]f under the guise of a presentment, the grand jury simply accuse, thereby compelling the accused to stand mute, where the presentment would warrant indictment so that the accused might answer, the presentment may be expunged; . . ."

[Jones v. People] 92 N.Y.S. at page 277.[24]

Judge Weinfeld also viewed the report in question as tantamount to an advisory opinion infringing upon matters exclusively within the province of another branch of government. The report recommended that the National Labor Relations Board "revoke the certification of the unions involved" and consider "including in each non-Communist affidavit a waiver by the signer of his Fifth Amendment privilege." [25]

In *Hammond*, the court was also troubled about separation of powers problems and concluded that "a grand jury is without authority to issue a report that advises, condemns or commends, or makes recommendations concerning the policies and operation of public boards, public officers, or public authorities." [26] There petitioners sought to defeat Ohio state indictments in which a number of them were charged, citing the prejudicial impact of a concurrent well-publicized report into which the grand jury had woven derogatory accusations against them. Among other things the jury stated that a group of 23 faculty members must share "responsibility for the tragic consequences of May 4, 1970" at Kent State University; it assigned major responsibility for the May, 1970 incident to "those persons who are charged with the administration of the University"; and it rendered "moral and social judgments on policies, attitudes, and conduct of the university administration, and some faculty and students." [27] *Hammond* relied upon Ohio law for the proposition that the grand jury lacked statutory authority to return a report of that kind in that case, noting further that common-law crimes and common-law criminal procedures were nonexistent in Ohio.[28]

23. 111 F.Supp. 858, 869 (S.D.N.Y.1953). The court noted that at least 14 reports had been filed by grand juries in the Southern District of New York without challenge in the 16 years prior to its decision. 111 F. Supp. at 869.

24. *Id.* at 861, 867.

25. *Id.* at 860.

26. 323 F.Supp. 326, 345 (N.D.Ohio 1971).

27. *Id.* at 336.

28. *Id.* at 343–344.

The Report here at issue suffers from none of the objectionable qualities noted in *Hammond* and *United Electrical*. It draws no accusatory conclusions. It deprives no one of an official forum in which to respond. It is not a substitute for indictments where indictments might properly issue. It contains no recommendations, advice or statements that infringe on the prerogatives of other branches of government. Indeed, its only recommendation is to the Court, and rather than injuring separation of powers principles, the Jury sustains them by lending its aid to the House in the exercise of that body's constitutional jurisdiction. It renders no moral or social judgments. The Report is a simple and straightforward compilation of information gathered by the Grand Jury, and no more.

■ Having considered the cases and historical precedents, and noting the absence of a contrary rule in this Circuit, it seems to the Court that it would be unjustified in holding that the Grand Jury was without authority to hand up this Report. The Grand Jury has obviously taken care to assure that its Report contains no objectionable features, and has throughout acted in the interests of fairness. The Grand Jury having thus respected its own limitations and the rights of others, the Court ought to respect the Jury's exercise of its prerogatives.

## II.

■ Beyond the question of issuing a report is the question of disclosure. It is here that grand jury authority ends and judicial authority becomes exclusive.[29]

As Chief Judge Thomsen observed regarding disclosure, "Each case should be decided on its own facts and circumstances."

The Court is the agency which must weigh in each case the various interests involved, including the right of the public to know and the rights of the persons mentioned in the presentment, whether they are charged or not. The Court should regulate the amount of disclosure, to be sure that it is no greater than is required by the public interest in knowing "when weighed against the rights of the persons mentioned in the presentment."[30]

There, the "presentment" or report was publicly released in summarized form after the court had noted the rampant speculation about the report and had weighed "the public interest in disclosure" against "the private prejudice to the persons involved, none of whom are charged with any crime in the proposed indictment."[31] Judge Ainsworth, in the 1973 Fifth Circuit case, posed the following criteria governing disclosure decisions:

. . . whether the report describes general community conditions or whether it refers to identifiable individuals; whether the individuals are mentioned in public or private capacities; the public interest in the contents of the report balanced against the harm to the individuals named; the availability and efficacy of remedies; whether the conduct described is indictable.[32]

There, portions of a report relating to federal narcotics control were left in the public record. Chief Judge Bryan in In Re Petition for Disclosure of Evidence, 184 F.Supp. 38 (E.D.Va.1960), cited the public interest, a particularized need for information and traditional considerations of grand jury secrecy in

29. In Re Grand Jury Proceedings, 479 F.2d 458 (5th Cir. 1973) ; In Matter of Application of Johnson et al., 484 F.2d 791, (7th Cir. 1973) ; In Re Special Grand Jury Impaneled January, 1969, 315 F.Supp. 662 (D.Md. 1970) ; In Re Petition for Disclosure of Evidence, 184 F.Supp. 38 (E.D.Va.1960). Orfield, The Federal Grand Jury, 22 F.R.D. 343, 446–447 (1959).

30. 315 F.Supp. at 678.

31. *Id.* at 679.

32. 479 F.2d at 460 n. 2.

granting disclosure of a report to one agency and denying it to others. The Seventh Circuit Court of Appeals in the Chicago police—Black Panther report case considered, among other criteria, judicial discretion over grand jury secrecy, the public interest, and prejudice to persons named by the report.

▌ We begin here with the fact that the Grand Jury has recommended disclosure; not public dissemination, but delivery to the House Judiciary Committee with a request that the Report be used with due regard for the constitutional rights of persons under indictment. Where, as here, a report is clearly within the bounds of propriety, the Court believes that it should presumptively favor disclosure to those for whom the matter is a proper concern and whose need is not disputed. Compliance with the established standards here is manifest and adds its weight in favor of at least limited divulgence, overbalancing objections, and leading the Court to the conclusion that delivery to the Committee is eminently proper, and indeed, obligatory. The Report's subject is referred to in his public capacity, and, on balance with the public interest, any prejudice to his legal rights caused by disclosure to the Committee would be minimal. As noted earlier, the Report is not an indictment, and the President would not be left without a forum in which to adjudicate any charges against him that might employ

Report materials. The President does not object to release.

The only significant objection to disclosure, is the contention that release of the Report beyond the Court is absolutely prohibited by Rule 6(e), Federal Rules of Criminal Procedure. The text of Rule 6(e) is set forth in the margin.[33] Counsel objecting to release draw particular attention to the statement "[persons may disclose matters occurring before the grand jury] only when so directed by the court preliminarily to or in connection with a judicial proceeding . . . ."

In their "Notes" accompanying Rule 6(e)[34] the Advisory Committee on Rules, responsible for drafting Federal Rules, explains the intent of that paragraph as follows:

1. This rule continues the traditional practice of secrecy on the part of members of the grand jury, *except when the court permits a disclosure*, Schmidt v. United States, 115 F.2d 394, C.C.A. 6th; United States v. American Medical Association, 26 F. Supp. 429, D.C.; *Cf.* Atwell v. United States, 162 F. 97, C.C.A. 4th; and see 18 U.S.C. former § 554(a) . . . .[35]

▌ It is apparent from an analysis of the Advisory Committee's authorities that the "traditional practice of secrecy" there codified covers a rather narrow area.[36] At most, the cases cited estab-

33. Rule 6(e) *Secrecy of Proceedings and Disclosure.* Disclosure of matters occurring before the grand jury other than its deliberations and the vote of any juror may be made to the attorneys for the government for use in the performance of their duties. Otherwise a juror, attorney, interpreter, stenographer, operator of a recording device, or any typist who transcribes recorded testimony may disclose matters occurring before the grand jury only when so directed by the court preliminarily to or in connection with a judicial proceeding or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury. No obligation of secrecy may be imposed upon any person ex-

cept in accordance with this rule. The court may direct that an indictment shall be kept secret until the defendant is in custody or has given bail, and in that event the clerk shall seal the indictment and no person shall disclose the finding of the indictment except when necessary for the issuance and execution of a warrant or summons. (18 U.S.C., Federal Rules of Criminal Procedure, Rule 6.)

34. 18 U.S.Code Ann., Rule 6, p. 234.

35. *Id.* (emphasis added.).

36. The *Schmidt* case cited was an appeal by two attorneys from a conviction of contempt for having authorized their clients, in a criminal case, to privately obtain the affidavits of grand jurors who had voted on their in-

lish only that secrecy must prevail during deliberations, and that any later disclosure will occur at the court's discretion. The phrase in the Rule, "preliminarily to or in connection with a judicial proceeding," evidently derived from the fact that the Advisory Committee had in mind only cases where the disclosure question arose at or prior to trial. It left the courts their traditional discretion in that situation and apparently considered no others. It affirmed judicial authority over persons connected with the grand jury in the interest of necessary secrecy without diminishing judicial authority to determine the extent of secrecy. The Court can see no justification for a suggestion that this codification of a "traditional practice" should act, or have been intended to act,

to render meaningless an historically proper function of the grand jury by enjoining courts from any disclosure of reports in any circumstance.

Since its enactment, the cases interpreting Rule 6(e) have varied widely on its disclosure provision. It has been held that "judicial proceeding" refers only to a proceeding in a United States District Court.[37] Other courts balancing need for disclosure against benefits of secrecy have both granted and denied disclosure of matters before a grand jury to state officials.[38] Administrative proceedings have been found to fit within the Rule's terms,[39] and not to fit.[40]

In the Second Circuit, Judge Learned Hand wrote that "the term 'judicial proceeding' includes any proceeding deter-

---

dictment, in violation of the jurors oath of secrecy. The affidavits were filed in an attempt to overturn the indictments. In its holding the court stated:

> Logically the responsibility for relaxing the rule of secrecy and of supervising any subsequent inquiry should reside in the court, of which the grand jury is a part and under the general instructions of which it conducted its "judicial inquiry." It is a matter which appeals to the discretion of the court when brought to its attention . . . and we think it is sound procedural law. (115 F.2d at 397, citations omitted.)

In the *American Medical Association* case, indicted defendants sought court permission to obtain the affidavits of grand jurors in support of pleas in abatement and motions to quash. The court stated in its holding, "Neither indictment, arrest of the accused, nor expiration of the jury term will operate to release a juror from the oath of serecy, as the defendants here contend. That can only be done by a court acting in a given case when in its judgment that unqualified jurors voted whenever at least twelve qualified jurors concurred in the indictment. 18 U.S. Code § 554(a), 1946 edition.

its judgment the ends of justice so require." 26 F.Supp. at 430 (citations omitted). In Atwell v. United States, the Fourth Circuit reversed the contempt conviction of a grand juror who had given statements regarding grand jury proceedings to defense counsel following indictments and dismissal of the grand jury. The court analyzed the jurors oath and held as follows:

> This oath required him (a) diligently to inquire and true presentment make of all such matters and things as were given him in charge; (b) to present no one for envy, hatred, or malice; (c) to leave no one unpresented for fear, favor, or affection, re-

ward, or hope of reward; (d) the United States' counsel, his fellows', and his own to keep secret. It may well be said that the first three obligations of this oath relate to the positive duty required of the grand juror, while the latter relates to and defines the rule of conduct to be followed by him in the discharge of these positive duties. The first three are demanded by direct mandate of the law; *the latter only by its policy, and solely in order that the first three may be more thoroughly and effectively performed.* (162 F. at 99, emphasis added).

Former § 554(a) of Title 18, U.S. Code simply barred pleas or motions to abate or quash indictments on the ground that unqualified jurors voted whenever at least twelve qualified jurors concurred in the indictment. 18 U.S. Code § 554(a), 1946 edition.

37. United States v. Downey, 195 F.Supp. 581 (D.Ill.1961) ; United States v. Crolich, 101 F.Supp. 782 (D.Ala.1952).

38. Compare In re Petition for Disclosure of Evidence, *supra* note 28 with In re Holovachka, 317 F.2d 834 (7th Cir. 1963) and Petition of Brooke, 229 F.Supp. 377 (D. Mass.1964).

39. Jachimowski v. Conlisk, 490 F.2d 894 (7th Cir. 1973), authorizing release of grand jury evidence for a police disciplinary investigation; In re Grand Jury Investigation William H. Pflaumer & Sons, Inc., 53 F.R.D. 464 (E.D.Pa.1971), permitting disclosure to agents of the Internal Revenue Service; In Re Bullock, 103 F.Supp. 639 (D.D.C.1952).

40. In Re Grand Jury Proceedings, 309 F.2d 440 (3rd Cir. 1962).

minable by a court, having for its object the compliance of any person, subject to judicial control, with standards imposed upon his conduct in the public interest, even though such compliance is enforced without the procedure applicable to the punishment of crime." [41] He added, "an interpretation that should not go at least so far, would not only be in the teeth of the language employed, but would defeat any rational purpose that can be imputed to the rule." [42] Matters occurring before the grand jury were thus made available for use in a disbarment proceeding. More recently in an opinion written by Chief Judge Friendly, the Second Circuit held that Rule 6(e) did not bar public disclosure of grand jury minutes, wholly apart from judicial proceedings, when sought by the grand jury witness. [43]

This difficulty in application of Rule 6(e) to specific fact situations likely arises from the fact that its language regarding "judicial proceedings" can imply limitations on disclosure much more extensive than were apparently intended. As the *Biaggi* decision just cited implies, Rule 6(e) which was not intended to create new law, remains subject to the law or traditional policies that gave it birth. These policies are well established, and none of them would dictate that in this situation disclosure to the Judiciary Committee be withheld.

■ In two well-known antitrust cases, Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959) and United States v. Proctor & Gamble Co., 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958), the Supreme Court has listed in summary form the bases of grand jury secrecy:

(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect [the] innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt. [44]

Upon the return of an indictment, the first three and the fifth reasons for secrecy are rendered inapplicable. The interest represented by the fourth, encouraging free disclosure by those who possess information regarding crimes, must be protected, but as these and other cases have asserted [45] a compelling need and the ends of justice may still mandate release.

■ Here, for all purposes relevant to this decision, the Grand Jury has ended its work. There is no need to protect against flight on anyone's part, to prevent tampering with or restraints on witnesses or jurors, to protect grand jury deliberations, to safeguard unaccused or innocent persons with secrecy. The person on whom the Report focuses, the President of the United States, has not objected to its release to the Committee. Other persons are involved only indirect-

---

41. Doe v. Rosenberry, 255 F.2d 118, 120 (2nd Cir. 1958).

42. *Id.*

43. In Re Biaggi, 478 F.2d 489 (2nd Cir. 1973). Biaggi, a New York City mayoral candidate at the time, wanted minutes released to answer charges made in the campaign that he had invoked his Fifth Amendment privilege as a witness before the grand jury.

44. 356 U.S. at 681 n. 6, 78 S.Ct. at 986. See also 1 Wright, Federal Practice and Procedure, § 106 at 170 (1969).

45. See, *e. g.*, United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 234, 60 S.Ct. 811, 849, 84 L.Ed. 1129 (1940): "But after the grand jury's functions are ended, disclosure is wholly proper where the ends of justice require it."

ly. Those persons who are not under indictment have already been the subject of considerable public testimony and will no doubt be involved in further testimony, quite apart from this Report. Those persons who are under indictment have the opportunity at trial for response to any incidental references to them. And although it has not been emphasized in this opinion, it should not be forgotten that we deal in a matter of the most critical moment to the Nation, an impeachment investigation involving the President of the United States. It would be difficult to conceive of a more compelling need than that of this country for an unswervingly fair inquiry based on all the pertinent information.

These considerations might well justify even a public disclosure of the Report, but are certainly ample basis for disclosure to a body that in this setting acts simply as another grand jury. The Committee has taken elaborate precautions to insure against unnecessary and inappropriate disclosure of these materials.[46] Nonetheless, counsel for the indicted defendants, some having lived for a considerable time in Washington, D. C., are not persuaded that disclosure to the Committee can have any result but prejudicial publicity for their clients. The Court, however, cannot justify non-disclosure on the basis of speculation that leaks will occur, added to the further speculation that resultant publicity would prejudice the rights of defendants in United States v. Mitchell et al. We have no basis on which to assume that the Committee's use of the Report will be injudicious or that it will disregard the plea contained therein that defendants' rights to fair trials be respected.

Finally, it seems incredible that grand jury matters should lawfully be available to disbarment committees and police disciplinary investigations and yet be unavailable to the House of Representatives in a proceeding of so great import as an impeachment investigation. Certainly Rule 6(e) cannot be said to mandate such a result. If indeed that Rule merely codifies existing practice, there is convincing precedent to demonstrate that common-law practice permits the disclosure here contemplated. In 1811, the presentment of a county grand jury in the Mississippi Territory, specifying charges against federal territorial Judge Harry Toulmin, was forwarded to the House of Representatives for consideration in a possible impeachment action.[47] Following a committee investigation, the House found the evidence inadequate to merit impeachment and dismissed the matter. Though such grand jury participation appears not to have occurred frequently, the precedent is persuasive.[48] The Court is persuaded to follow the lead of Judges Hastings, Barnes and Sprecher speaking for the Seventh Circuit, Judges Friendly and Jameson of the Second Circuit, Judge Wisdom of the Fifth Circuit, and Judge Thomsen of the District of Maryland.[49] Principles of grand jury secrecy do not bar this disclosure.[50]

---

46. See, Procedures for Handling Impeachment Inquiry Material, Committee on the Judiciary, House of Representatives, 93rd Cong., 2d Sess., February, 1974, House Committee Print, at 1, 2.

47. 3 Hinds' Precedents of the House of Representatives § 2488 at 985, 986 (1907).

48. In Deschler's words, "In the House of Representatives there are various methods of setting an impeachment in motion: . . . by charges transmitted from the legislature of a State . . . or from a grand jury . . . ." Deschler, Constitution, Jefferson's Manual, and Rules of the House of Repre-

sentatives, H.R. Doc. 384, 92d Cong. 2d Sess., § 603 at 293.

49. In Matter of Application of Johnson et al., *supra* at p. 1224, In Re Biaggi, *supra* note 43, United States v. Cox, *supra* note 12 (concurring opinion), and In Re Presentment of Special Grand Jury Impaneled January, 1969, *supra* at p. 1223, respectively.

50. The Court's holding renders unnecessary a consideration of Mr. Jenner's argument on behalf of the Committee that insofar as Rule 6(e) conflicts with the constitutional powers of impeachment, the Rule is *pro tanto* overridden. See Transcript at 32–39.

## III.

Consistent with the above, therefore, the Court orders that the Grand Jury *Report and Recommendation*, together with accompanying materials be delivered to the Committee on the Judiciary, House of Representatives. The only individuals who object to such order are defendants in the United States v. Mitchell et al. case currently pending in this court. Their standing is dubious at best given the already stated facts that (1) their mention in the Report is incidental, (2) their trials will provide ample opportunity for response to such references, none of which go beyond allegations in the indictment, and (3) considerations of possible adverse publicity are both premature and speculative. Their ability to seek whatever appellate review of the Court's decision might be had, is therefore questionable. Nevertheless, because of the irreversible nature of disclosure, the Court will stay its order for two days from the date thereof to allow defendants an opportunity to pursue their remedies, if any, should they desire to do so.

The President's request to have counsel review the Report's contents has not received comment from the Committee counsel due to their feeling that such comment would be inappropriate.[51] It is the Court's view that this request is more properly the Committee's concern, and it therefore defers to the Chairman for a response to the President's counsel.

Having ruled that the Recommendation of the Grand Jury and request of the House Judiciary Committee should be honored, the Court relinquishes its own control of the matter, but takes advantage of this occasion to respectfully request, with the Grand Jury, that the Committee receive, consider and utilize the Report with due regard for avoiding any unnecessary interference with the Court's ability to conduct fair trials of persons under indictment.

[51]. Letter to the Honorable John J. Sirica from John Doar, Esq., dated March 12, 1974, and filed in Misc. 74-21.