SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.
OPINION
JUSTICE TODD
In this opinion, we consider the question left unanswered by our opinion of July 27, 2018 in these matters, In re: 40th Investigating Grand Jury , --- Pa. ----, 190 A.3d 560, 563 (2018) (" Grand Jury I "). Specifically, we address what, if any, due process remedy is presently available to Petitioners, who are former and current priests in various Catholic Dioceses throughout Pennsylvania specifically condemned in Report 1 of the 40th Investigating Grand Jury ("Report 1") as "predator priests," to secure their constitutionally guaranteed right to reputation.[1] Pa. Const. art. I, § 1. For the reasons that follow, we conclude that we may not employ any of the remedies offered by the parties, and, thus, that we must make permanent the redaction of Petitioners' identifying information from Report 1, which we previously ordered as an interim measure, as this is the only viable due process remedy we may now afford to Petitioners to protect their constitutional rights to reputation.
*715 I. Background
In our prior opinion authored by Chief Justice Saylor, we stressed that an individual's right to his or her personal reputation was regarded by the framers of our organic charter as a fundamental individual human right - one of the "inherent rights of mankind." Grand Jury I, 190 A.3d at 573.[2] For that reason, throughout our Commonwealth's history, it has been accorded the same exalted status as other basic individual human rights, such as freedom of speech, freedom of assembly, and freedom of the press. Thus, as with all legal proceedings which affect fundamental individual rights, the judicial branch serves a critical role in guarding against unjustified diminution of due process protections for individuals whose right of reputation might be impugned.
We recognized that, in the context of grand jury proceedings under the Investigating Grand Jury Act ("Act"),[3] a final pronouncement of that body in the nature of Report 1, wherein the grand jury found that named individuals perpetrated heinous criminal acts, but for which no future criminal proceedings can likely be brought, presents a substantial risk of impairment of those individuals' right to their reputation. We perceived the gravity of this risk as arising out of the fact that a report such as Report 1 "will be seen as carrying the weight of governmental and judicial authority," and the grand jury is regarded as "embodying the voice of the community" with respect to its specific findings. Grand Jury I, 190 A.3d at 573. Consequently, as the content of Report 1 is condemnatory of Petitioners, we concluded that principles of fundamental fairness demanded enhanced procedural protections be afforded Petitioners in order to safeguard their right to reputation.
We then proceeded to evaluate whether two procedures statutorily enumerated in the Act provide individuals in Petitioners' situation with adequate due process protections for their reputational rights, and we ultimately concluded that they did not. We found the first procedure - the discretionary right of the supervising judge to allow named but nonindicted individuals to submit a written response to the report conferred by 42 Pa.C.S. § 4552(e)[4] - to be inadequate, given that such a response would be hearsay, and, because of the voluminous size and scope of Report 1, there is a likelihood that, to a reader, the response would pale in significance to the overall report. Moreover, because the report contains numerous allegations involving the reprehensible behavior of a multiplicity of individuals, we deemed the cumulative effect of those allegations as likely to inflame a reader's ire, and, thus, impede his or her capacity to evaluate the credibility of an individual's response.
We also determined that the second procedure available under the Act - its requirement, pursuant to *716 42 Pa.C.S. § 4552(b),[5] that the supervising judge examine the report and determine if it was based on facts derived from the grand jury investigation and is supported by a preponderance of the evidence - provided insufficient due process protections to individuals named in the report. We found that such a preponderance-of-the-evidence standard was "best suited to adversarial proceedings where competing litigants present evidence to be weighed by a factfinder." Id. at 574. We noted that a grand jury proceeding is not adversarial in nature, inasmuch as the Commonwealth controls the entirety of the process through which it, and only it, presents evidence, some of which, such as hearsay, may not be introduced in a traditional adversarial proceeding such as a trial. Moreover, such evidence is not subject to meaningful testing before the grand jury, through either cross-examination or the presentation of rebuttal evidence. Inasmuch as this review process by the supervising judge does not give named individuals an opportunity to respond to the grand jury's conclusions in "a meaningful way," we concluded it provided inadequate due process protection for Petitioners. Id. at 575.
Given that there were divergent views among the Justices of this Court as to what remedy, if any, could safeguard Petitioners' due process rights, our Court allowed publication of Report 1, but also ordered the temporary redaction of Petitioners' names and other identifying information from the report in order to protect their right to reputation, pending oral argument before our Court, and disposition of the remedy question.[6] In so doing, we explained that our Court has previously employed such an excisional remedy for an individual's identifying information, where an individual's right to reputation was imperiled by the outcome of a legal proceeding in which there was judicial involvement. See id. at 577 (citing Carlacci v. Mazaleski , 568 Pa. 471, 798 A.2d 186 (2002) ).[7] We also directed additional briefing specifically focused on the question of remedy. A copy of Report 1 with Petitioners' names and other identifying information redacted ("Interim Report 1") was *717 released on August 14, 2018, and our Court held oral argument on the remedy issue on September 26, 2018.[8]
II. Arguments of the Parties
We note, initially, that, despite our Court's request, neither party has directly addressed the extent and source of our Court's authority to fashion a judicial remedy in this situation. Petitioners presently argue that, in determining what procedural safeguards are appropriate in this instance, the three-part test derived from the United States Supreme Court's decision in Mathews v. Eldridge , 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), and recently utilized by our Court in Bundy v. Wetzel , --- Pa. ----, 184 A.3d 551 (2018), provides the general relevant guiding framework. These cases establish that the amount of process which is due in a particular case is determined by application of a test which considers three factors: "(1) the private interest affected by the governmental action; (2) the risk of an erroneous deprivation together with the value of additional or substitute safeguards; and (3) the state interest involved, including the administrative burden the additional or substitute procedural requirements would impose on the state." Id. at 557.
Regarding the first element of the Matthews / Bundy test, Petitioners underscore that their interest in their reputation is of the highest order, and, thus, worthy of maximal procedural protection against wrongful impairment, at least as rigorous as that afforded other interests in life or property. Petitioners characterize the risk of an erroneous deprivation of this interest, as "not just high, but certain." Petitioners' Supplemental Brief at 8. In support of this claim, Petitioners cite to certain asserted factual errors in Report 1, such as an alleged confrontation of one of the Petitioners by a victim of claimed abuse when, in fact, the Petitioner had died almost a decade earlier, and they highlight the fact that other Petitioners named in the report would have been children at the time they allegedly abused victims, and, hence, could not have been ordained priests. Petitioners aver that, had they been able to offer evidence to the grand jury, these errors could have been avoided. Petitioners note that, even if the matter is remanded to a different supervisory judge, this would not completely cure the mistakes, as, while clearly erroneous material can be excised from the report, factual evidence that creates false and misleading impressions cannot be cured by a judge, given that he or she cannot add material to the record or the report. Petitioners seek to raise these matters before the grand jury itself and to the supervising judge by presenting to both what they characterize as rebuttal and exculpatory evidence.
Petitioners perceive the administrative burden of providing additional due process as negligible, particularly when weighed against the fact that the Commonwealth itself has a compelling interest in safeguarding the grand jury process and ensuring that it produces a truthful and accurate report, as well as ensuring that it "functions fairly and with due regard for the rights of the accused." Id. at 12.
Petitioners emphasize that other states provide extensive due process protections for those who will be named by a grand jury report, and they suggest that we should follow their lead in adopting some, or all, of these protections. For instance, regarding public officials, New York allows *718 those officials to testify before the grand jury, and guarantees them the right to file a response to the grand jury report. Moreover, the supervising judge may direct the grand jury to take additional testimony or seal the record if he or she determines the report is not supported by a preponderance of evidence, which, significantly, must be both credible and legally admissible. Id. at 24 (citing N.Y. Crim. Proc. Law § 190.85 ).
As another example of enhanced procedural safeguards, Petitioners cite Alaska's procedure where the grand jury must remain in session while the supervising judge reviews the report and the record of the proceedings and makes his or her own findings of fact. Additionally, the supervising judge is statutorily required to determine whether the report will "improperly infringe" on an individual's constitutional right to privacy, and, if the judge determines that it does, he or she must return the report to the grand jury which may conduct further proceedings to address the judge's concern. Id. at 27 (citing Alaska R. Crim. P. 6.1(b) ).
Petitioners further highlight that, in at least 18 other states, grand juries are prohibited from naming individuals in a report unless the conduct alleged in the report results in criminal charges being filed against the individuals.[9] According to Petitioners, the filing of criminal charges guarantees to the named individual a full panoply of due process protections, allowing that individual, either prior to a trial or at a trial, to challenge the evidence, cross-examine witnesses, and present evidence establishing his or her innocence. Because Pennsylvania has no such requirement, individuals such as Petitioners may be named as participants in criminal activity and, indeed, as here, be branded as sexual predators, but never have the opportunity at any subsequent judicial proceedings to contest the grand jury's conclusions in this regard. For this reason, Petitioners argue that, unlike in a criminal proceeding, for them the "critical" phase of the investigating grand jury process occurs when the grand jury itself receives evidence, and when the supervising judge reviews it, inasmuch as this is where the factual record is created and evaluated. Petitioners assert that, just as a criminal defendant is entitled to due process at critical stages of a criminal trial, they are entitled to due process at these two critical phases of the grand jury proceedings.
The nature of this due process, in Petitioners' view, consists, first, of the right to appear before the supervising judge and to be heard, which they claim includes, at a minimum, the right to discovery of the Commonwealth's evidence and to make challenges thereto, the right to cross examine witnesses, the right to make their own counseled presentation of evidence, and the right to provide rebuttal or exculpatory evidence. Secondly, with regard to the grand jury itself, Petitioners seek the right to appear before that body and to provide rebuttal and exculpatory evidence.[10] Petitioners express confidence that the supervising judge can implement these procedural safeguards as part of his or her supervisory role.
However, Petitioners also aver that they have been irrevocably tainted by public statements of the Attorney General regarding *719 their pursuit of this litigation. Petitioners specifically reference the following public pronouncements of the Attorney General: (1) his letter to Pope Francis asking for his intervention to "direct church leaders to follow the path you charted at the Seminary in 2015 and abandon their destructive efforts to silence the survivors," Petitioners' Supplemental Brief at 46 (quoting Exhibit 2 to Petitioners' Brief, Letter to Pope Francis, 7/25/2018) ); (2) statements made at a press conference in which the Attorney General: described Petitioners as having "concealed their identities through sealed court filings;" accused them of seeking to "bury the sexual abuse by priests upon children, and cover it up forever;" observed that, while the redactions are representative of only "a very small fraction of the predator priests named by this grand jury, no story of abuse is any less important than another;" and (3) the fact that when asked to comment about Petitioners' claims of inaccuracies in the report, the Attorney General answered by stating that, in evaluating these claims, the sources should be considered, i.e., "who they are and ... their backgrounds." Id. at 47-48 (quoting Transcript of Attorney General Press Conference, 8/14/18).[11] Petitioners allege that they have already suffered damage to their reputation from these statements, and that any additional grand jury proceedings would be tainted such that it would be impossible for them to get unbiased consideration of the evidence which they wish to present. Thus, Petitioners argue that, because of the impossibility of receiving "[a] fair 'redo' " before a new grand jury, as an alternative form of relief, they ask that Interim Report 1 be adopted by our Court as the final report. Id. at 53-54.
The Commonwealth responds by asserting that procedures are available under the Act to protect the due process rights of Petitioners, while, at the same time, vindicating the public's right to identify and address abuses committed by societal institutions. The Commonwealth suggests that the grand jury may be called back for the limited purpose of considering factual disputes such as the ones Petitioners highlight in their brief,[12] or, alternatively, a new grand jury may be empaneled to consider these matters, a process which the Commonwealth suggests is commonplace. The Commonwealth argues that, under either of these procedures, the named individuals could be given the right to testify before the grand jury and, also, to submit evidence "as the jurors deem appropriate." Commonwealth Supplemental Brief at 11.
After the grand jury has received this additional evidence regarding the disputed issues, it could then resubmit the report to the supervisory judge who could then, in turn, distribute the report to Petitioners for them to highlight errors or inaccuracies, or make argument regarding whether the report should be published. The Commonwealth adheres to its prior position, however, that the role of the supervisory *720 judge should be limited to reviewing the extant grand jury record, as supplemented by additional testimony and evidence of Petitioners, and that the supervising judge should not make new credibility determinations or findings of fact. The Commonwealth reasons that allowing the supervisory judge to assume a fact-finding role would be improper since he or she would be making credibility determinations and evaluating the evidence based on a cold record, not on the live testimony of witnesses.
The Commonwealth proffers that, once Petitioners have been given the opportunity to testify before the grand jury and to submit supplemental evidence to it, the supervising judge may then review the report, and, if Petitioners still have objections, he or she may rule on them utilizing the preponderance of the evidence standard set forth in Section 4552(b). If the supervising judge deems the report to be supported by the grand jury record, he or she should approve publication, and Petitioners may still file a response as allowed by Section 4552(e). Although conceding the right to file such a response is discretionary with the supervising judge, the Commonwealth points out that a judicial decision thereon can be reviewed by an appellate court under an abuse of discretion standard. If the supervising judge deems the report unsupported, then he or she may return the report to the grand jury, which may then modify the report or elect to withdraw it altogether, and, in either case, Petitioners' identities will remain protected.
The Commonwealth claims that, if its suggested procedures are followed, individuals' names will not be released in a grand jury report unless there has been a judicial finding that the grand jury record supports their identification, and only after they have been given a full and fair opportunity to present evidence that they did not commit the acts detailed in the report. The Commonwealth maintains that such procedures provide constitutionally adequate due process for Petitioners, while still permitting the citizen grand jury to perform its traditional role of a "watchdog" over the conduct of institutions. Commonwealth Supplemental Brief at 19.
Additionally, the Commonwealth highlights the fact that it is not only grand juries that issue investigative reports; rather, such reports are also routinely issued by other officials within the executive branch such as the Auditor General and Inspector General, and, frequently, those reports focus criticism on individuals for their conduct as public officials. Likewise, certain other groups within these branches, such as committees of the General Assembly, or the interbranch commissions utilized by our Court, are tasked with investigating a wide variety of matters arising out of the operation of governmental and related public bodies, and the Commonwealth cautions that their reports sometimes, by necessity, identify and criticize specific officials within those organizations as having been responsible for causing, or greatly contributing to, the specific problems that are the subject of the report. The Attorney General avers that such identification is frequently necessary in order for the public to fully understand and seek remedial measures to address official wrongdoing. The Attorney General suggests that if any of Petitioners' legal positions are adopted, it would interfere with the investigative functions of these groups to the degree that it would prevent them from fulfilling their core missions.[13]
*721 III. Analysis
We begin our analysis by observing that the investigating grand jury process is solely a creature of statute, the Investigating Grand Jury Act, and, as such, the General Assembly has specified in detail therein a grand jury's duties and the procedures to be utilized in carrying out its designated tasks. The Act is therefore the product of a deliberative legislative process whereby various policy questions regarding the empaneling of an investigative grand jury, the duration of its existence, the manner in which it may receive and consider evidence, the circumstances under which it may issue a report, and the conditions under which that report may be disseminated to the public were carefully considered and evaluated by that lawmaking body. Accordingly, the various provisions of the Act governing the term of existence and operation of the grand jury - including the grand jury's receipt and consideration of evidence, its preparation of a report, and the role of the supervising judge - reflect the legislature's ultimate policy decisions on those matters. See 42 Pa.C.S. §§ 4545, 4546, 4548, and 4552. In responding to the present constitutional challenge, our Court may not usurp the province of the legislature by rewriting the Act to add hearing and evidentiary requirements that grand juries, supervising judges, and parties must follow which do not comport with the Act itself, as that is not our proper role under our constitutionally established tripartite form of governance. See, e.g. , Commonwealth v. Hopkins , 632 Pa. 36, 117 A.3d 247, 262 (2015) (declining to rewrite a mandatory sentencing statute which was constitutionally infirm to supply missing components which would rectify the constitutional violation, inasmuch as curing statutory omissions is a legislative function); Castellani v. Scranton Times, L.P., 598 Pa. 283, 956 A.2d 937, 950 (2008) (refusing to engraft upon the Shield Law an exception to protection for reporter sources since it was not authorized by the statutory text).
It is for this reason that we must reject the Commonwealth's suggestion that the investigating grand jury in this matter could be recalled to hear testimony and receive evidence from Petitioners. Putting aside the logistical difficulties attendant to such a proposal - such as whether the original grand jurors and alternates are available to serve - such an extraordinary measure is not authorized by the plain text of the Act. Section 4546 of the Act specifies that an investigating grand jury "shall ... serve for a term of 18 months," unless, by majority vote of its members at the expiration of its term, it determines that "it has not completed its business." 42 Pa.C.S. § 4546. However, "no such investigating grand jury term shall exceed 24 months from the time it was originally summoned." Id. Here, the grand jury was convened in May 2016, and, after its term was extended to the statutorily permitted 24 months, it disbanded upon the completion of its report in April 2018. Thus, given that the grand jury's term has expired and that it has been disbanded, we conclude that the 40th Statewide Investigating Grand Jury has no authority under the Act to take any further official action. Our careful review of the Act reveals that it contains no allowance for this grand jury to be reassembled, to hear additional testimony, to receive supplementary evidence, *722 or to issue a supplemental report.[14] Moreover, as discussed, the investigating grand jury is a distinctly statutory creation. We are unaware of any authority, nor has the Commonwealth identified any, which would allow this Court to craft a judicial remedy that re-impanels the grand jury, requires it to take additional evidence, and to author a second supplemental report, contrary to the express legislative design of the Act.
Similarly, the remedy proffered by Petitioners and endorsed by the dissent - that the supervising judge conduct a hearing to receive evidence from Petitioners regarding disputed matters in the report and then make findings of fact based on his evaluation of the strength of that evidence as compared to that which the grand jury received - fares no better. First, it is not authorized by the Act. The limited authority of the supervising judge to review the grand jury report set forth in Section 4552(b) cannot be interpreted in such an expansive fashion. Specifically, this section authorizes the supervising judge only to "examine" the report and the record of the proceedings and determine "if the report is based upon facts received in the course of an investigation authorized by this subchapter and is supported by the preponderance of the evidence." 42 Pa.C.S. § 4552(b). The supervising judge's role under this statutory provision is, thus, strictly circumscribed to conducting a judicial review of the report and the record as developed before the grand jury. It plainly does not authorize the supervising judge to conduct his own de novo review, let alone receive additional evidence.
Moreover, such a process would be fraught with problems rooted in the nature and character of the divergent type of evidence the supervising judge would be forced to evaluate. The grand jury heard, and considered firsthand, the testimony of the Commonwealth's witnesses and the other evidence on which it based its report, and, after considering it, made its own credibility determinations, and drew factual conclusions from that evidence. By contrast, at the hearing proposed by Petitioners, the supervising judge, who was not present in the grand jury room, would be forced to evaluate any new evidence against a cold record, without having heard the testimony of the Commonwealth's witnesses firsthand.
Additionally, as Petitioners have acknowledged, when this evidence was presented to the grand jury, there was no cross-examination of witnesses or presentation of rebuttal evidence permitted, and the Commonwealth exclusively controlled the manner of its presentation to the jury. Furthermore, the grand jury was permitted to hear and consider some evidence that was not subject to the normal safeguards of reliability afforded by the Rules of Evidence. By contrast, at the proposed hearing before the supervising judge, the Commonwealth presumably would be free to challenge Petitioners' evidence via cross-examination, or object to its entry under the Rules of Evidence, and to present its own rebuttal evidence. This would create a marked imbalance whereby Petitioners' evidence would be subjected to testing through an adversarial process, whereas the Commonwealth's evidence would not. Consequently, the supervising judge would have to evaluate evidence that does not stand on an equal footing in terms of reliability. This situation would *723 raise its own due process issues, as well as implicate equal protection concerns. While conceivably the Commonwealth could be permitted to recall the witnesses it offered before the grand jury and re-present the evidence it introduced, this would undermine or even nullify the grand jury proceedings, as the supervising judge would become the ultimate factfinder, not the grand jury, contrary to the legislative design of the Act.
Finally, even ignoring these substantial obstacles, Petitioners have offered no authority which would allow us to order, as a judicial remedy, further proceedings before the supervising judge. We conclude that we are unable to do so.
Where the judiciary has been statutorily enmeshed in a procedure which may result in deprivation of an individual's due process rights, we may take corrective measures pursuant to our inherent judicial authority to avoid the infliction of such harm. As we recognized in Carlacci, supra , this authority derives from a bedrock principle of our legal system which has undergirded it since its inception: "[w]here there is a right, there is a remedy." Carlacci , 798 A.2d at 190 & n.9.
In that case, we addressed the question of what judicial remedy was available to avoid potential harm to an individual's reputation occasioned by the issuance of a temporary PFA order, which resulted from an ex parte judicial finding that allegations of abuse made in a PFA petition were credible, but no formal adversarial hearing was ever subsequently held to determine the merits of those allegations. Thus, even though the respondent was never given the opportunity to cross-examine the witness or witnesses against him, or to introduce rebuttal evidence, and as no final order was ever entered against him, the PFA Act provided no mechanism by which the respondent could seek to have the records of the preliminary PFA proceedings purged from the judicial system. Nevertheless, given the fact that the statutory scheme afforded the respondent no meaningful opportunity to protect his reputation from an erroneous accusation of abuse, and in recognition of the paramount significance of the individual right to reputation, we ordered the PFA records to be expunged. That is, we prevented the infliction of reputational harm resulting from the constitutionally-infirm process.
However, while we may ameliorate the potential damage to an individual's constitutionally protected right to reputation by expunging records of a judicially supervised proceeding deemed infirm, in this case, regarding the Investigating Grand Jury Act, we conclude it is not within our purview to wholly recraft a purely statutory process and compel the parties to reopen and participate anew in an extra-statutory proceeding. Simply stated, we conclude that we may not judicially correct the Investigating Grand Jury Act (although, as we discuss next, we may insure an infirm process does not result in unconstitutional harm). Accordingly, for all of these reasons, we must reject Petitioners' proffered remedy.
Consequently, given that we are compelled to reject the remedies proffered by the parties,[15] we consider the only remaining option available to us to be the one which we utilized during the pendency of this appeal: redaction. As we recognized *724 in our prior opinion in this matter, the supervising judge's limited review and approval of a grand jury report for public release gives it an imprimatur of official government sanction which carries great weight in the eyes of the public, and, thus, may compound the harm to a person's reputation who is wrongly named therein. As such, we ordered the temporary redaction of Report 1 while we addressed the challenges to it. In the absence of any other viable remedy, we are compelled to find that these redactions, with respect to Petitioners, must be made permanent.
We acknowledge that this outcome may be unsatisfying to the public and to the victims of the abuse detailed in the report. While we understand and empathize with these perspectives, constitutional rights are of the highest order, and even alleged sexual abusers, or those abetting them, are guaranteed by our Commonwealth's Constitution the right of due process. It is the unfortunate reality that the Investigating Grand Jury Act fails to secure this right, creating a substantial risk that Petitioners' reputations will be irreparably and illegitimately impugned. This prospect we may not ignore. Therefore, as no other remedy is presently available, we order that the temporary redaction of Petitioners' names and other identifying information from Report 1 be made permanent.[16]
We emphasize, however, that our adoption of this remedy is not to be construed as demeaning the service of the grand jury in this matter. As the Chief Justice wrote in our earlier opinion, the grand jury "undertook the salutary task of exposing alleged child sexual abuse and concealment of such abuse, on an extraordinarily large scale." Grand Jury I, 190 A.3d at 578. We recognize and appreciate the importance of the grand jury's efforts. Nevertheless, as the highest Court in this Commonwealth, it is our obligation to guard against constitutional infringements. Because Petitioners' most fundamental individual constitutional rights have been imperiled, we are compelled to take these curative measures in order to fulfill our Court's duty to protect those rights.
Justices Baer, Donohue, Dougherty, Wecht and Mundy join the opinion.
Justice Baer files a concurring opinion.
Justice Dougherty files a concurring opinion.
Chief Justice Saylor files a dissenting opinion.
I join the Majority Opinion in full in concluding, reluctantly, that the parties failed to present any currently available remedy to cure the due process violations identified in this Court's decision of July 27, 2018, other than the previously ordered redaction of the grand jury report. In re Fortieth Statewide Investigating Grand Jury , --- Pa. ----, 190 A.3d 560 (2018). Additionally, I concur in principle with many of the sentiments expressed by Justice Dougherty in his responsive opinion. I write separately to address two points.
First, like my colleague in concurrence, I agree that this Court should provide guidance to the Commonwealth regarding how it may comport with due process in conducting future investigating grand juries where an individual's right to reputation is implicated, pending any legislative action to address the constitutional deficiencies in the Investigating Grand Jury *725 Act, 42 Pa.C.S. §§ 4541 - 4553, highlighted by this Court's July 27th decision. Id. Moreover, while I understand the benefits of presenting a potential framework for how due process may be effectuated, I emphasize the concurrence's observation that the recommendations "are not etched in stone" and "should not be interpreted as the only method of affording the necessary protections." Concurring Op. at 726 (Dougherty, J.). My fear is that any rigid framework could be manipulated to delay the publication of grand jury reports until the passage of the statutory maximum term of a grand jury, concluding in the unsatisfactory result seen in the instant case.
While I do not endorse specific procedures, I generally caution the Commonwealth that, if it intends to criticize but not indict an individual in a grand jury report to an extent that threatens the individual's right to reputation, it should provide reasonable notice of any potential accusations and a meaningful opportunity to respond thereto. In my view, detailed procedural requirements are better left to the legislative branch or addressed by a supervising judge on a case-by-case basis.
Second, I acknowledge the Majority's observation that the question of any future grand jury investigation of these Petitioners is outside the scope of the current case. Majority Op. at 724, n.16. Nevertheless, based on my current understanding of the various constitutional rights at issue and estoppel doctrines generally, I see no impediment to a new investigation of these Petitioners, or potentially other individuals, by a future grand jury, so long as the necessary due process is provided by the Commonwealth. I acknowledge, of course, that future advocacy to the contrary may alter my position.
The majority's conclusion there is no due process remedy presently available to secure petitioners' constitutional rights to reputation is compelling and unavoidable. As the majority points out, neither party has directed us to any authority that would permit the Court to fashion any of the suggested judicial remedies, each of which would require "wholly recraft[ing] a purely statutory process and compel[ling] the parties to reopen and participate anew in an extra-statutory proceeding." Majority Opinion, at 723. Unfortunately, the parties' exhaustive search for a legally supportable remedy capable of protecting petitioners' due process rights at this late stage has been fruitless. Therefore, I am constrained to join the majority's opinion adopting as permanent the temporary redactions of petitioners' names and other identifying information.
However, while the majority's well-reasoned opinion reaches the correct result in this particular case, it does little to illuminate a path forward. The majority recognizes the remedies suggested by the parties, as well as the procedures authorized by statute in certain other states, are not without merit. Id. at 723, n.15. Nevertheless, it concludes that "making such procedures a part of the grand jury process is a task committed to the sound discretion of the legislature, which is in the best position to evaluate them and determine if, as a matter of policy, any of these procedures should be adopted and utilized in future grand jury proceedings." Id. I take no issue with this conclusion. In my respectful view, however, the issue that brought the parties here is of constitutional dimension, and I believe this Court's further guidance on that legal question would be beneficial to the legislature, should it ultimately endeavor to revisit the procedures set forth in the Investigating Grand Jury Act *726 ("Act"), 42 Pa.C.S. §§ 4541 - 4553. Moreover, investigating grand juries will surely persist even after today's decision, and, presumably, even in the absence of legislative correction. Indeed, as we previously recognized, nothing in the Act precludes the Commonwealth from continuing this practice, so long as it can satisfy the constitutional standard on its own initiative. See In re Fortieth Statewide Investigating Grand Jury , --- Pa. ----, 190 A.3d 560, 574 (2018) ( Grand Jury I ) ("[T]he Investigating Grand Jury Act does not restrain the attorney for the Commonwealth from implementing additional procedural protections[.]"). Thus, while I fully agree with the majority that it is beyond our authority to recraft the Act by judicial fiat, I write separately to elucidate how, in my view, the dissatisfying result of this case can and should be avoided in the future.
Initially, I recognize that, because due process is an "elusive concept" with "exact boundaries [that] are undefinable," Hannah v. Larche , 363 U.S. 420, 442, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960), the procedures I recommend below are not etched in stone. For that reason, my proposed formulation should not be interpreted as the only method of affording the necessary protections, nor as foreclosing the imposition of additional statutory safeguards, as some other states have deemed appropriate. See , e.g. , N.Y. CRIM. PROC. LAW § 190.85. The proposals below are, quite simply, the minimum procedures I believe are required to assure due process to nonindicted individuals criticized in an investigating grand jury report. See In re Grand Jury of Hennepin Cty. Impaneled on Nov. 24, 1975 , 271 N.W.2d 817, 820-21 (Minn. 1978) ("A procedure may be devised which allows the release of the much needed information contained in grand jury reports and at the same time protects the individuals involved from unjust accusation."). With that understanding, my proposed procedures, which I believe are supported by the Act's current statutory scheme, follow.
First , in line with the Court's prior pronouncement that it would be "ideal" for named individuals to be afforded the opportunity to appear before the grand jury, see Grand Jury I , 190 A.3d at 578, I would hold this requirement essential to due process. See SARA SUN BEALE & WILLIAM C. BRYSON, GRAND JURY LAW & PRACTICE § 2.4 ("At a minimum, due process is likely to require that the individual have an opportunity to refute the charges against him in an appearance before the grand jury[.]"). As we previously noted, and as the Commonwealth now seems to agree, see Commonwealth's Supplemental Brief at 9, the government should wish to present such testimony "for the benefit of lay grand jurors who have plainly set out to find the truth and reveal it to the public." Grand Jury I , 190 A.3d at 574. See also BEALE, ET AL. , GRAND JURY L. & PRAC. § 2.4 ("[A]llowing the subject of the investigation to appear and testify before the report is filed would not seriously disrupt the grand jury's investigation, and it would greatly enhance the fairness of the proceedings (and perhaps their accuracy as well)."). Moreover, a "meaningful" opportunity to be heard demands more than the bare occasion to testify before the grand jury. For the named individual's testimony to be meaningful, it must be made with full knowledge of the allegations against him, which, in some cases, might require the disclosure of certain underlying evidence supporting those allegations. See generally In re Second Report of Nov., 1968 Grand Jury of Erie Cty. , 26 N.Y.2d 200, 309 N.Y.S.2d 297, 257 N.E.2d 859, 861 (1970) (Fuld, C.J.) ("To limit the accused official or employee to a bare unsupported and unsubstantiated list of charges and allegations against him would serve to deprive *727 him of that opportunity to be heard[.]"). After hearing the individual's testimony, if any, the grand jury will be better suited to decide whether it needs to consider additional evidence, or whether it is prepared to finalize its report and submit it to the supervising judge.[1]
Second , after the named individual has been afforded a meaningful opportunity to testify, the grand jury, by an affirmative majority vote, may submit its report to the supervising judge. See 42 Pa.C.S. § 4552(a). If the submitted report still includes references critical of a named but nonindicted individual, it should be supported by citation to all specific exhibits or transcript pages pertinent to that individual. As discussed below, this process will facilitate the discrete review in which the supervising judge must subsequently engage.
Third , if the supervising judge concludes there are critical references in the report, such that it would implicate the right to reputation, he should provide the appropriate sections to the criticized individuals. See 42 Pa.C.S. § 4552(e). This will put those named individuals on notice of the proposed criticisms, and allow them an opportunity to file any written objections and appear before the supervising judge to argue against their inclusion in the report.
Fourth , pursuant to 42 Pa.C.S. § 4552(b), the supervising judge "to whom such report is submitted shall examine it and the record of the investigating grand jury" to determine whether the report - including each individual criticism contained therein - is "based upon facts received in the course of an investigation authorized by [the Act] and is supported by the preponderance of the evidence." Id. In other words, the judge must review criticism of any individual on its own merit. See Grand Jury I , 190 A.3d at 575 (preponderance-of-the-evidence review pursuant to Section 4552(b) requires discrete determination of whether each specific criticism is supported by a preponderance of the evidence, rather than on a "report-wide basis"). This review should be limited to the existing record; and the inquiry would merely be whether the record provides a basis for the grand jury's conclusion, akin to a sufficiency analysis, whether or not the reviewing judge would have reached the same conclusion himself. See generally In re Vencil , 638 Pa. 1, 152 A.3d 235, 237, 242-43 (2017), cert. denied , --- U.S. ----, 137 S.Ct. 2298, 198 L.Ed.2d 751 (2017) (equating "sufficiency" with "supported by" and holding, in the context of judicial review of an involuntary civil commitment under the Uniform Firearms Act, that a reviewing judge's task is not to conduct a de novo review but to "determine *728 whether [the] findings are supported by a preponderance of the evidence," "limited to the information available to the [decision-maker] at the time"). In this respect, I emphasize the majority's conclusion that the judge's role under this statutory provision is "strictly circumscribed to conducting a judicial review of the report and the record as developed before the grand jury ... [and] plainly does not authorize a supervising judge to conduct his own de novo review, let alone receive additional evidence." Majority Opinion, at 722.[2]
Fifth , if the supervising judge concludes the record supports the criticism of each and every identified individual, the report should be approved. See 42 Pa.C.S. § 4552(b). If there is any individual for whom criticism is not supported by a preponderance of the evidence, the report should be sent back to the grand jury, if it is still in session, along with the bases for the supervising judge's remand. The grand jury may then decide whether the deficiencies can be remedied, whether the relevant criticisms should be deleted, or whether the report as a whole should be withdrawn. See Grand Jury I , 190 A.3d at 576 ("it would be preferable for [a] grand jury to have an opportunity to correct mistakes that it may have made"). If, on the other hand, the grand jury's term has expired, any unsupported criticism must be excised by the supervising judge. See id. ("[T]his Court has determined that the remedy of excision is available with respect to a grand jury report that offends due process, or otherwise unconstitutionally impairs reputational rights, relative to a particular individual or individuals.").
Sixth , once the court approves publication of the report, any criticized individuals should be given the opportunity to file a public response. See 42 Pa.C.S. § 4552(e). While I acknowledge this Court's concern that Section 4552(e) calls upon the supervising judge to exercise "discretion" in applying this provision, see Grand Jury I , 190 A.3d at 566 n.4, I would simply conclude that a judge's refusal to publish relevant, appropriate material - by which I mean material that is not obviously prohibited, privileged, or protected (such as names and addresses of grand jurors) - would constitute an abuse of discretion. Hence, in all but the rarest of cases, the judge must permit the criticized individual to publish a response to the grand jury report.
In my view, application in future cases of the procedures outlined above would be sufficient to remedy the problems that now preclude the full release of the report in this case. Moreover, these proposals are entirely consistent with the Act as currently written and require no judicial rewriting, which I agree with the majority would be improper. In the event the legislature may choose to revisit the Act, I stress again that these suggested procedures are *729 not the only means of protecting reputational interests while also preserving the historic watchdog function of the citizen grand jury; rather, these procedures, taken together, merely establish a constitutional floor that I believe would satisfy due process. In a similar vein, should the legislature choose not to act, I see no impediment to the Commonwealth unilaterally employing these or more extensive due process procedures to safeguard the reputational rights of named but nonindicted individuals, which in turn will ensure the integrity of future investigating grand jury reports and allow for their full release.
As the majority relates, the remedy initially requested by Petitioners was a remand for a de novo evidentiary hearing before a supervising judge to determine whether Report 1 of the 40th Statewide Investigating Grand Jury was supported by a preponderance of the evidence relative to each of the petitioners. In this regard, Petitioners made what was perhaps a strategic decision not to lodge a facial challenge to the constitutionality of the Investigating Grand Jury Act or to oppose the release of the bulk of the grand jury's report.[1] For my part, I have favored -- and I continue to favor -- the affordance of the comparatively modest relief that had been requested at the outset.
I respectfully differ with any suggestion that such relief would constitute a rewriting of the Investigating Grand Jury Act. Rather, I believe that a hearing before a judicial officer serves as a conventional pre-deprivation remedy. Moreover, this Court has often portrayed its authority to regulate procedures in the judiciary as being exclusive, see, e.g. , Commonwealth v. McMullen , 599 Pa. 435, 444, 961 A.2d 842, 847 (2008), and accordingly, it seems to me to be unsurprising that the General Assembly would refrain from attempting to engraft a detailed procedural code upon an investigating grand jury scheme encompassing supervision by a member of the judiciary. Furthermore, the enactment is subordinate to the Constitution, see, e.g. , In re Subpoena on Judicial Inquiry and Review Bd., 512 Pa. 496, 507, 517 A.2d 949, 955 (1986), and its provisions can and should be interpreted to allow for the conferral of supplemental procedures and protections when necessary, under the Constitution, to vindicate individual rights. See 1 Pa.C.S. § 1922(3) (embodying the presumption "[t]hat the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth").
Although I would grant the de novo hearings that Petitioners had requested, I would not require discovery on the scale that they envision or the cross-examination of witnesses that testified before the grand jury. Rather, since due process is a flexible concept to be assessed against the particular circumstances, I would authorize the supervising judge to make reasonable judgments concerning whether, and to what extent, Petitioners would be permitted to review and test the evidence upon which the grand jurors relied. The judicial officer's assessment might be informed by (among other considerations) residual secrecy concerns, to the extent that they still pertain, as well as the burden upon victim-witnesses, should their own interests be at stake.[2]
*730 At a minimum, however, it is my position that Petitioners should be provided the opportunity to advocate that the grand jury's particularized findings of criminal and/or morally reprehensible conduct are not supported by a preponderance of the evidence. In addition, for those of the petitioners who were never afforded the opportunity to testify before the grand jury's term expired, I conclude that due process requires that they be permitted to do so before a supervising judge. I would also direct that, after the judge entertains the testimony and arguments, he should make a determination whether the grand jury's challenged criticisms of each individual petitioner are supported by a preponderance of the evidence and prepare an opinion explaining why this is or is not so. Finally, I would require these opinions to be filed under seal, at least until the claims involving Petitioners' reputational rights are finally resolved.
I recognize that it would be "far more difficult to incorporate other procedural safeguards, such as [a mandated] opportunity to confront and cross-examine adverse witnesses, without fundamentally altering the grand jury's traditional inquisitorial role." 1 SARA SUN BEALE & WILLIAM C. BRYSON, GRAND JURY LAW AND PRACTICE § 2.4 (1986). This is why I would leave these matters to the discerning judgment of a supervising judge, in the first instance, for circumstance-dependent consideration according to the governing litmus of fundamental fairness and with due consideration of the historical and institutional grounding of the grand jury.

Petitioners are 11 of the more than 300 priests named in Report 1.

A more complete factual and procedural history of the proceedings which transpired in this matter may be found in that opinion.

42 Pa.C.S. § 4541 et seq.

This subsection provides:
(e) Authorization of response by nonindicted subject.-- If the supervising judge finds that the report is critical of an individual not indicted for a criminal offense the supervising judge may in his sole discretion allow the named individual to submit a response to the allegations contained in the report. The supervising judge may then in his discretion allow the response to be attached to the report as part of the report before the report is made part of the public record pursuant to subsection (b).
42 Pa.C.S. § 4552(e).

This subsection provides:
(b) Examination by court.-- The judge to whom such report is submitted shall examine it and the record of the investigating grand jury and, except as otherwise provided in this section, shall issue an order accepting and filing such report as a public record with the court of common pleas established for or embracing the county or counties which are the subject of such report only if the report is based upon facts received in the course of an investigation authorized by this subchapter and is supported by the preponderance of the evidence.
Id. § 4552(b).

As discussed in Grand Jury I , Petitioners are part of a larger group of "[d]ozens of individuals (primarily members of the clergy)" who challenged Report 1, generally asserting a denial of constitutional rights. Grand Jury I , 190 A.3d at 565 ; see id. at 565-68. We ordered the redaction from Report 1 of identifying information for Petitioners as well as any individuals with an appellate challenge pending before the Court. See id. at 578.

In Carlacci , which we discuss at greater length infra , our Court held that the naming of the respondent in a temporary Protection From Abuse ("PFA") order entered ex parte by a judge, without the respondent having a chance to defend against the allegations that furnished the basis of the order, impaired his constitutional right to reputation. Thus, even though the PFA statute provided no formal mechanism for expungement of that order, our Court deemed respondent's right to reputation to be of such significance that, pursuant to our inherent authority to avoid violations of constitutional rights posed by the outcome of statutorily directed court proceedings involving the judiciary, we ordered expungement of the PFA order to ameliorate any potential harm to respondent's reputation.

Subsequent to oral argument, Petitioners and the Commonwealth filed a Joint Motion to Supplement Record, and the Commonwealth filed a separate Motion to Supplement Record with our Court. We grant both motions.

The Commonwealth disputes Petitioners' characterization of this jurisprudence. See Commonwealth Supplemental Brief at 23-24. Because we decide this case solely under Pennsylvania law, we need not resolve these conflicting arguments.

This second assertion represents an expansion of Petitioners' original suggested remedy, which consisted solely of a hearing before the supervising judge.

Petitioners additionally allege that the Attorney General leaked grand jury information on two separate occasions, even though such information was protected from disclosure by this Court's redaction order. The Attorney General denies this allegation. Petitioners conveyed these allegations in writing to the special master appointed by our Court to oversee the redaction process, the Honorable John M. Cleland. We note that, in any event, Petitioners seek no additional relief for this purported violation than the due process remedies they have proposed in their brief.

In this regard, the Commonwealth disputes the factual assertions of inaccuracies in Interim Report 1 enumerated by Petitioners, contending, for example, that the date discrepancies were the result of typographical errors regarding birthdates and ages of the individuals referenced.

Our Court granted leave for the Catholic League for Individual and Civil Rights to file an amicus brief in this matter, and for the Attorney General to file a responsive brief. In its amicus brief, the Catholic League substantially aligns with Petitioners' arguments, and the Attorney General's responsive brief largely reiterates the arguments it has made in its principal brief.

The Commonwealth's suggestion that a new grand jury could be empaneled to hear these disputed matters does not resolve the question before us: whether the grand jury's findings regarding Petitioners and its condemnation of them may be released as part of this grand jury report, Report 1.

This is not to suggest that we find the remedies suggested by the parties or the procedures utilized by other states to be without merit. However, making such procedures a part of the grand jury process is a task committed to the sound discretion of the legislature, which is in the best position to evaluate them and determine if, as a matter of policy, any of these procedures should be adopted and utilized in future grand jury proceedings.

It is outside the scope of this opinion to address the question of whether a future investigating grand jury, utilizing a constitutionally permissible process, may now investigate the allegations against these Petitioners.

There are several facets to this particular procedure on which I take no position at this time. For example, although the Commonwealth now agrees individuals criticized in a report should be given an opportunity to testify before the grand jury, it argues they "would have the same rights as other witnesses under the Act." Commonwealth's Supplemental Brief at 9, citing 42 Pa.C.S. § 4549(c). Whether Section 4549(c) should apply with full force to individuals who choose to invoke their due process right to be heard by the grand jury is questionable; indeed, a blanket application of Section 4549(c) to these "witnesses" would raise serious questions about their counsel's role in the proceeding - not to mention the Commonwealth's attorney's role. Similarly, I take no position on petitioners' observation that some jurisdictions also afford an individual named in a grand jury report the opportunity to present witnesses on his behalf. See Petitioners' Supplemental Brief at 26, citing Utah Code Ann. § 77-10a-17(1), (2)(b) (affording any person named in a report "and any reasonable number of witnesses on his behalf" an opportunity to testify before the grand jury). For now, I simply reiterate that what is at issue is the named individual's right to be heard.

Beyond agreeing with the majority as to what the plain language of Section 4552(b) does and does not allow of a supervising judge, I reject outright petitioners' wide-sweeping claim that due process demands the opportunity to participate in a de novo evidentiary hearing, let alone that such hearing must require, inter alia , "an opportunity to cross-examine witnesses[.]" Petitioners' Supplemental Brief at 38. Neither law nor reason supports this assertion. See , e.g. , Hannah , 363 U.S. at 449, 80 S.Ct. 1502 (rights of apprisal, confrontation, and cross-examination "have not been extended to grand jury hearings because of the disruptive influence their injection would have on the proceedings"); Beale, et al. , Grand Jury L. & Prac. § 2.4 ("It would, however, be far more difficult to incorporate other procedural safeguards, such as the opportunity to confront and cross-examine adverse witnesses, without fundamentally altering the grand jury's traditional inquisitorial structure.").

To the degree this was a strategic choice, it seems to me to have been a reasonable one in the context of the subject matter and scale of the report in issue.

In our July 27th opinion, we explained that "the historical acceptance of the institution of the grand jury can go only so far in justifying the relaxation of procedural requirements for the protection of [fundamental] rights." In re 40th Statewide Investigating Grand Jury , --- Pa. ----, ----, 190 A.3d 560, 573 (2018). Accordingly, we rejected the proposition that a person criticized in a grand jury report -- at least where the criticisms are of the nature and scale of Report 1 -- has no right to any pre-deprivation process beyond the submission of a written response. See id. at 575. Nevertheless, I find that the institutional grounding of the grand jury regime should serve a significant role in assessing the nature of the process that is due to Petitioners at the present stage.
Along these lines, the investment of discretion in a supervising judge to shape the proceedings would ameliorate, to a degree, the concerns expressed by Judge Krumenacker about burdening investigating grand jury proceedings with trial-like requirements and otherwise fundamentally altering grand jury review. See id. at 567 (citing In re 40th Statewide Investigating Grand Jury, No. 571 M.D. 2016, slip op. at 7-8 (C.P. Allegheny June 5, 2018) ). But, again, the Court has ruled that the critical character of the grand jury report in issue calls for some additional process. Accord id. at 575.