**[J-4-2024] [MO: Mundy, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | |
|---|---|
| IN RE: THE THIRTIETH COUNTY INVESTIGATING GRAND JURY | : No. 15 EM 2022<br>:<br>: Appeal from the Order of the<br>: Philadelphia County Court of<br>: Common Pleas, Trial Division, dated<br>: March 4, 2022 at Misc. No.<br>: 0008094-2018<br>:<br>:<br>: ARGUED: March 6, 2024 |

**DISSENTING OPINION**

**JUSTICE DONOHUE**                                    **DECIDED: October 24, 2024**

This case involves the issuance of a grand jury report (the "Report") detailing the basic facts surrounding the death of a person who was in the custody of law enforcement and the subsequent investigation into that death. Though we must speak in broad strokes due to the secret nature of proceedings before a grand jury, we must also acknowledge the substance of the Report. The Report addresses the facts surrounding the death and the investigation, Report, Parts I & II, then explains how the death "could have been prevented[.]" Report, at 7. It does so by addressing the responsibility of various actors for the death and the failures of the investigation. Report, Parts III-A & III-B (considering the responsibility of various public actors). The Report then details the status of the investigation and provides recommendations such as additional documentation of use-of-force incidents, the retention of the paperwork, and additional checks and balances and meaningful third-party oversight of certain entities involved in these types of investigations. Report, at 101-07. The Majority announces that pursuant to the Investigating Grand Jury Act, 42 Pa.C.S. §§ 4541-4553 (the "Act"), the Report must be

permanently sealed because it does not meet the statutory definition of an "investigating grand jury report" ("report"). Then, it advises that nonindicted individuals who are "criticized," even if not defamed, in a report are entitled to notice and the opportunity to be heard.

I write separately to express my view that this Report easily comports with the statutory framework for investigating grand jury reports. The Majority's adoption of arbitrary and overly technical requirements for reports is troubling because it significantly narrows, by judicial opinion, the statutorily established grand jury reporting function, and it minimizes the power of the grand jury to operate as the government watchdog envisioned by the statutory scheme. Because I agree that certain named, unindicted individuals criticized in the Report were entitled to additional process, I would remand for the grand jury supervising judge to redact the Report prior to publication.

In Pennsylvania, investigating grand juries are creatures of statute. *In re: Fortieth Statewide Investigating Grand Jury*, 197 A.3d 712, 731 (Pa. 2018) ("*Fortieth Statewide Investigating Grand Jury II*").[1] We have characterized the Act as "the product of a

---

[1] In that case, the fortieth statewide investigating grand jury investigated allegations of child sexual abuse by individuals in various Catholic dioceses throughout Pennsylvania, culminating in a grand jury report. A group of former and current priests impacted by the forthcoming publication of the report in 2018 appealed to this Court asserting the denial of pre-deprivation due process. The Court held that the priests were entitled to pre-deprivation due process and accordingly issued an order for designation of a special master to review submissions regarding proposed redactions to the report. We also ordered that the report be temporarily redacted. *In re: Fortieth Statewide Investigating Grand Jury*, 190 A.3d 560, 570-71 (Pa. 2018) ("*Fortieth Statewide Investigating Grand Jury I*"). Following that process, in *Fortieth Statewide Investigating Grand Jury II*, this Court addressed the proper due process remedy available to the former and current priests condemned in the report. This Court found that it was enmeshed in a procedure in which the priests' due process rights were endangered. However, given that the fortieth statewide investigating grand jury's term had expired, and the Act contained no protocol for reassembling a grand jury, the Court had no authority to order further proceedings either before the grand jury or the supervising judge. Therefore, the Court ordered that the temporary redactions of the report be made permanent. *Fortieth Statewide Investigating Grand Jury II*, 197 A.3d at 723-24.

deliberative legislative process[.]" *Id.* at 721. That is, the various policy questions regarding an investigative grand jury, including "the circumstances under which it may issue a report, and the conditions under which that report may be disseminated to the public were carefully considered and evaluated by that lawmaking body." *Id.* The provisions of the Act "including the grand jury's … preparation of a report … reflect the legislature's ultimate policy decisions on those matters." *Id.* (citing, inter alia, 42 Pa.C.S. § 4552). Further, "our Court may not usurp the province of the legislature by rewriting the Act" to add requirements which do not comport with the Act, "as that is not our proper role under our constitutionally established tripartite form of governance." *Id.*

Therefore, the focus of our attention is on the statutory provision for a report, found in Section 4552 of the Act.

### § 4552. Investigating grand jury report

(a) **General rule**.--Any investigating grand jury, by an affirmative majority vote of the full investigating grand jury, may, at any time during its term submit to the supervising judge an investigating grand jury report.

(b) **Examination by court**.--The judge to whom such report is submitted shall examine it and the record of the investigating grand jury and, except as otherwise provided in this section, shall issue an order accepting and filing such report as a public record with the court of common pleas established for or embracing the county or counties which are the subject of such report **only if the report is based upon facts received in the course of an investigation authorized by this subchapter and is supported by the preponderance of the evidence.**

42 Pa.C.S. §§ 4552 (a)-(b) (emphasis added). Section (b) implicitly requires that the grand jury supervising judge determine whether the report is authorized under the Act.

To make that determination, the grand jury supervising judge would look to the definitional section, which indicates the nature of a report:

> **"Investigating grand jury report."** A report submitted by the investigating grand jury to the supervising judge regarding conditions relating to organized crime or public corruption or both; or proposing recommendations for legislative, executive, or administrative action in the public interest based upon stated findings.

42 Pa.C.S. § 4542. Because there are no allegations of organized crime involved in this matter, the Report must relate to either public corruption or propose recommendations to meet the statutory definition. The Legislature defines public corruption:

> **"Public corruption**." The unlawful activity under color of or in connection with any public office or employment of:
>
> (1) any public official or public employee, or the agent of any public official or public employee under color of or in connection with any public office or employment; or
>
> (2) any candidate for public office or the agent of any candidate for public office.

42 Pa.C.S. § 4542.

In addressing whether the Report satisfies the Act's statutory definition of a report in 42 Pa.C.S. § 4552(b), the Majority begins by announcing that, in order to be a report "regarding conditions relating to … public corruption" it must "address 'unlawful activity'," i.e., "describe the activity [and] also what makes that activity unlawful, specifically what laws have been violated." Majority Op. at 10. It is no surprise the Majority finds that this Report lacking given that this is the first time we have announced such a technical requirement. *See id.* at 11 (stating that the Report "does not identify any laws that were violated or explain how the objectionable activities and behavior [of nonindicted individuals] were unlawful").

The Majority cites no authority for adopting this arbitrary technical requirement. The Act describes a report "regarding conditions relating to … public corruption" but it does not mandate citation of the crimes code sections violated or descriptions of what makes certain activities unlawful. 42 Pa.C.S. § 4542. Consistent with the historic role of grand juries as "general watchdogs over state and local government[,]" a report regarding conditions of public corruption must identify the unlawful activity engaged in. Sarah Sun Beale et. al, GRAND JURY LAW & PRACTICE § 2:1 (2d ed. 2018). The grand jury report is a valuable tool to identify and address public corruption to "improve the quality of local government and increase public confidence in it." *Id.* To accomplish this purpose, and to meet the statutory requirements, a report need not mirror an indictment. The General Assembly supplied meaning for the terms "investigating grand jury report" and "public corruption," and we can confidently and swiftly dispose of Petitioner's arguments in this respect.

The recitation of facts in the Report clearly describes criminal conduct and is more than adequate to meet the requirement of demonstrating unlawful activity for purposes of reporting conditions of public corruption. In this respect, we are constrained by grand jury secrecy. Though I cite directly to the Report, like the Majority, I cite information consistent with the facts publicly available through the participants' redacted filings and court orders. Majority Op. at 2. *Compare* Report, at 7 (describing "abusive arrest and death" and stating that certain governmental actors "bear the brunt of responsibility for assaulting" the deceased), *and* 18 Pa.C.S. §§ 2702 (simple assault), 2703 (aggravated assault), 2705 (recklessly endangering another person). *Compare* Report, at 4-5, 8 (describing multiple failures to investigate, document, and the "effort to delay, misdirect, and bury the investigation … until crucial, time-sensitive evidence disappeared"), *and* 18 Pa.C.S. § 5101 (defining obstruction).

The Majority's conception of an overly technical burden requiring citation to specific laws is out of step with the Act's requirement. The Act merely characterizes a report as "regarding conditions relating to … public corruption[.]" 42 Pa.C.S. § 4542. It envisions a report that identifies **conditions** of public corruption, and it does not expressly require that a report identify specific instances of unlawful conduct nor explanation of how the conduct is unlawful. Imposing that burden upon the laypersons who comprise the grand jury interferes with their ability to focus on exposing conditions of public corruption. As one commentator and law professor observed,

> The argument in favor of the reporting function is strongest when the grand jury uncovers a violation of the public trust that is not regulated by the criminal law, and a report reveals that violation without an implication of criminal misconduct. This type of report exposes violations of the public trust where evidence of wrongdoing is qualitatively insufficient to establish a crime, and thus the grand jury is unable to reveal the official's misconduct by initiating a prosecution. Such a report furthers the public interest since it publicizes the official's misconduct and thereby holds the official accountable under a stricter standard of conduct than that required by the criminal law. The issuance of the report is also consistent with the historical role of the grand jury as a citizen watchdog over both noncriminal and criminal misconduct in government.

Barry Jeffrey Stern, *Revealing Misconduct By Public Officials Through Grand Jury Reports*, 136 U.PENN.L.REV. 73, 125-26 (1987). Consistent with that logic, the General Assembly established a mechanism for reporting "conditions relating to … public corruption[.]" 42 Pa.C.S. § 4542. The General Assembly did not require that reports regarding public corruption should mirror indictments or presentments. Confusingly, the Majority does.

It seems like the Majority's reticence regarding grand jury reports stems from concerns about damage to individual reputations. *In re: Fortieth Statewide Investigating Grand Jury*, 190 A.3d 560, 570-71 (Pa. 2018) ("*Fortieth Statewide Investigating Grand*

*Jury I*") (stating that, with regard to grand jury reports, "[t]he core concern of courts has been with the protection of reputational rights"); *see also* Beale, supra, § 2:1 (observing that critics of the grand jury reporting function argue about the unfairness of publicly accusing, criticizing and censuring individuals). The Majority's concern is misplaced, as the reputational concerns do not impact the legal sufficiency of the Report vis-à-vis the Act. The Constitution provides adequate and full protection of the right to reputation, and consideration of the process afforded to protect individuals named in a grand jury report is a separate and distinct issue from whether the Report meets the statutory definition. Moreover, in my view, the Majority's insistence on the naming and identifying of unlawful conduct channels grand jury efforts toward accusations and pseudo-indictments. If we require such specificity with regard to identifying and describing instances of unlawful conduct, we increase the risk that the report will touch upon individual rights rather than speak generally to systemic corruption.

I also believe that this Report meets the statutory definition as it "proposes recommendations for legislative, executive, or administrative action in the public interest based upon stated findings." 42 Pa.C.S. § 9542. As noted, the Report provides "stated findings" when it addresses the facts surrounding the death and subsequent investigation of a person who was in custody. Throughout the Report, there are also observations comparing the conduct of this investigation to the proper course. The thrust of this Report is to identify a governmental problem and then to make recommendations to course correct, i.e., to "improve the quality of local government and increase public confidence in it." Beale, supra, § 2:1. The Report recommends, inter alia, additional documentation of use-of-force incidents, the retention of the paperwork, and additional checks and balances and meaningful third-party oversight of certain entities involved in these types of investigations. Report, at 101-07.

The Majority oversteps the role of the judiciary in its effort to discredit the grand jury recommendations. It says that the recommendations in this Report "are not in the 'public interest' as that term is used in the [Investigating Grand Jury Act]." Majority Op. at 12. Though it admits that there is no specific ratio of factual recitation to recommendations required, the Majority decides that this Report fails because it is focused on meting out punishment and blame and providing answers to the deceased's family. *Id.* at 13. Citing to *In re Grand Jury Investigation No. 18*, 224 A.3d 326, 332 (Pa. 2020), the Majority states that it is not in the public interest "to utilize an investigating grand jury report to mete out punishment or provide relief for specific victims for unproven, albeit serious crimes" just because criminal prosecution is unavailable. Majority Op. at 13.

The Majority's characterization of the purpose of this Report rings hollow. The Act gives insight into the nature of reports which propose governmental recommendations. Namely, they "propos[e] recommendations for legislative, executive, or administrative action in the public interest based upon stated findings." 42 Pa.C.S. § 9542. When the Majority and Petitioner draw attention to the extensive factual findings of the Report to suggest that it is overly focused on the conduct or the circumstances of the death and investigation of the death of a person in custody, they overlook that the statutory definition of a report requires that any recommendations be "based upon stated findings." 42 Pa.C.S. § 9542.

Moreover, this grand jury investigation was initiated under a prior District Attorney's Office. Report, at 66. The grand jury investigation was motivated by concerns of the inadequacy of the investigation, responding to governmental officials who came forward with memorandum describing concerns regarding the inadequate investigation into the death of a person in custody. This motivation speaks more to governmental reform than

to seeking relief for this victim's family or retribution against individuals. Petitioner, like the Majority, attempts to minimize the Report by stating that its "primary purpose … [was] to provide relief" for individuals when a criminal prosecution was not possible. Petitioner's Redacted Brief at 28. However, the Office of the Attorney General ("OAG") appropriately rebuffs that "providing such answers was the job of the investigation to begin with. The very fact that long-awaited answers came from the grand jury [R]eport suggests that the initial investigation may have been flawed, and that the public concerns the [R]eport identifies are not merely an afterthought." OAG's Redacted Brief, at 18. Indeed, with the initiation of the grand jury investigation, various officials came forward to express specific concerns about the investigation as well as general concerns regarding mismanagement of investigations. Report, at 50. The Report, though it clearly describes unlawful conduct, does not accuse individuals of specific criminal conduct. Instead, its focus is on identifying the failures in the investigative process (i.e., public corruption) to provide targeted fixes for improving the legislative, executive, and administrative processes (i.e., recommendations). As the OAG observes, the "detailed analysis" in the Report is "entirely consistent with the statutory definition and purpose of a report, since the validity of the recommendations depends on the supporting facts." OAG's Redacted Brief, at 17.

Finally, the Majority's comparison to *Grand Jury Investigation No. 18*, overlooks a glaring distinction between the two scenarios: that report accused a **private** individual of criminal conduct which could not be prosecuted due to the running of the statute of limitations. *Grand Jury Investigation No. 18*, 224 A.3d at 332. Unlike the present Report which uncovers systemic public corruption, a grand jury report relating to the conclusions of an investigation into a **private** individual's criminal conduct does not lend itself to "recommendations for legislative, executive, or administrative action in the public interest[.]" 42 Pa.C.S. § 9542. Also, *Grand Jury Investigation No. 18* is basically a

skeleton of an opinion on this issue. It does not provide sufficient facts to understand the nature of any recommendations in the report issued in that case, aside from my natural inferences about the private versus public nature of that matter. For those reasons, the Majority's reliance on *Grand Jury Investigation No. 18* is misplaced.

In colonial America, the grand jury's function was twofold—a protector of individual rights and a force for good government. Stern, supra, at 84 (describing how grand juries in colonial America performed not just an accusatory function but also "acted in the nature of local assemblies: making known the wishes of the people, proposing new laws, protesting against abuses in government, performing administrative tasks, and looking after the welfare of their communities") (internal citation omitted). In the latter function, grand juries issued reports to reveal public corruption and make recommendations for better government. James Wilson, Founding Father and associate Justice of the United States Supreme Court, characterized the grand jury as "a great channel of communication, between those who make and administer the laws, and those for whom the laws are made and administered." *In re Rep. & Recommendations of June 5, 1972 Grand Jury Concerning Transmission of Evidence to the House of Representatives*, 370 F.Supp. 1219, 1222-23 (D.D.C. 1974) (citing THE WORKS OF JAMES WILSON, vol. II at 537 (R.G. McCloskey, ed.) (1967)). He observed that grand jury reports encompass "[a]ll operations of the government, and of its ministers and officers[,]" that "[t]hey may suggest public[] improvements, and the modes of removing public inconveniences: they may expose to public[] inspection, or to public[] punishment, public[] bad men, and public[] bad measures." *Id.*

This Report addresses the death of a person in government custody and the substandard investigation of the death that followed. The final section of this Report focuses on recommendations for executive and administrative action in the public

interest. This Report thus serves the archetypical function of a grand jury report as a channel of communication to report public corruption and to recommend improvements. The Report fits squarely within the statutory framework for reports established by the Legislature, and the spirit of the Report is perfectly in step with the historic purpose of grand jury reports.

The grand jury's reporting function—identifying conditions of organized crime, public corruption and making recommendations for better government—is perhaps the most divisive function it serves. *See* INVESTIGATING GRAND JURY TASK FORCE REPORT, at 11 (Nov. 2019) (observing that "[t]he subject of grand jury reports divided the members of the Task Force more sharply than any other issue" and that four members of the Task Force recommended the abolition of grand jury reports). Whole articles have been devoted to the topic of "whether modern grand juries should have the authority to reveal violations of the public trust without initiating a prosecution." Stern, supra, at 85. Nonetheless, arguments criticizing the usefulness and propriety of a grand jury report must be directed to the General Assembly. The authority to publicize reports, so long as they comply with the limitations on government imposed in our Constitution, is a matter of public policy for the General Assembly. We are bound by the Act, and this Report comfortably fits within the statutory definition for a report. *Fortieth Statewide Investigating Grand Jury I*, 197 A.3d at 721 (explaining that our Court may not usurp the legislative prerogative and rewrite the Act); *see also* INVESTIGATING GRAND JURY TASK FORCE REPORT, supra, at 52 (recognizing that, with regard to the Task Force's policy recommendation regarding abolishing the reporting function, there was "debate[] whether a policy recommendation of this scope to the legislature was consistent with the mandate from the Supreme Court, which focused on improving the role of the judiciary in the grand jury process"). Reasonable minds can and do disagree about the propriety of grand jury

reports identifying conditions of organized crime, public corruption and recommendations for legislative, executive, or administrative action, but it is not this Court's prerogative to minimize the scope of a grand jury's functions.

Given my conclusion that this Report fulfills the statutory criteria for a grand jury report and my agreement with the Majority that certain named, unindicted individuals criticized in the Report were entitled to additional process, I would remand for the grand jury supervising judge to redact the Report prior to publication.[2]

I dissent.

Chief Justice Todd and Justice Wecht join this dissenting opinion.

---

[2] The Majority misses the opportunity to provide guidance regarding the threshold for the right to reputation and due process protections in this setting, the question on which we exercised extraordinary jurisdiction pursuant to 42 Pa.C.S. § 726. After reading the Majority Opinion, practitioners are left with two possibilities: it may be that the prohibition against criticism without due process encompasses any individual named in a report. Majority Op. at 19 (stating that "nonindicted individuals who are named in a grand jury report run the risk of being deprived of their fundamental right to reputation by the publication of such a report and are entitled to due process prior to that deprivation"). Alternatively, the Majority could be read as establishing a narrower prohibition encompassing a narrower class of individuals, i.e., only those criticized are entitled to additional process. Id. at 23-24 (concluding that the grand jury supervising judge failed to provide additional process to "all named, nonindicted individuals criticized in the Report"). In any event, the Majority fails to define criticism.

I would hew to the position of the OAG. The OAG thoughtfully explained that the right to reputation in the Pennsylvania Constitution "protects against the equivalent of libel and slander[,]" and it proposed to apply the well-developed body of law regarding defamation to identify criticism warranting additional process in a grand jury setting. OAG's Redacted Brief at 15, 25. Based on its careful review of the Report, the OAG identifies certain named persons in the Report who should have received notice, and it concludes that because "the grand jury is no longer in session … [r]evisions to the Report by the supervising judge may [] be required." Id. at 30-34. I would remand for the grand jury supervising judge to address the revisions necessary to protect those individuals' right to reputation.